[919 NE2d 172, 891 NYS2d 1]

EXECUTIVE RISK INDEMNITY INC., Appellant, v PEPPER HAMILTON LLP et al., Respondents. PEPPER HAMILTON LLP et al., Third-Party Plaintiffs-Respondents, v CONTINENTAL CASUALTY COMPANY et al., Third-Party Defendants-Appellants.

Argued September 9, 2009; decided October 20, 2009

314

## POINTS OF COUNSEL

*Kornstein, Veisz Wexler & Pollard, LLP,* New York City (*William B. Pollard, III,* and *Amy C. Gross* of counsel), for appellant. I. The prior knowledge exclusions are required to be applied as written. (*Read v Lehigh Val. R.R. Co.,* 284 NY 435; *Moscow Fire Ins. Co. v Bank of N.Y. & Trust Co.,* 280 NY 286; *Zurich Ins. Co. v Shearson Lehman Hutton,* 84 NY2d 309; *Loucks v Standard Oil Co. of N.Y.,* 224 NY 99; *Cooney v Osgood Mach.,* 81 NY2d 66; *Finucane v Interior Constr. Corp.,* 264 AD2d 618; *Welsbach Elec. Corp. v MasTec N. Am., Inc.,* 7 NY3d 624; *Coregis Ins. Co. v Wheeler,* 24 F Supp 2d 475; *Ehrgood v Coregis Ins. Co.,* 59 F Supp 2d 438; *Westport Ins. Corp. v Atchley, Russell, Waldrop & Hlavinka, L.L.P.,* 267 F Supp 2d 601.) II. Even under a de novo review, the prior knowledge exclusions are unambiguous and are required to be applied as written under Pennsylvania and New York law. (*White v Knickerbocker Ice Co.,* 254 NY 152; *State of New York v R.J. Reynolds Tobacco Co.,* 304 AD2d 379; *Teichman v Community Hosp. of W. Suffolk,* 87 NY2d 514; *Greenfield v Philles Records,* 98 NY2d 562; *White v Continental Cas. Co.,* 9 NY3d 264; *Zion v Kurtz,* 50 NY2d 92; *Shilbury v Board of Supervisors of County of Sullivan,* 54 Misc 2d 979; *United States v Gonzales,* 520 US 1; *Maine v Thiboutot,* 448 US 1; *Seaport Park Condominium v Greater N.Y. Mut. Ins. Co.,* 39 AD3d 51.)

*Cozen O'Connor,* New York City (*Kevin M. Mattessich, Jacob C. Cohn* and *Patrick M. Kennell* of counsel), for Continental Casualty Company, third-party defendant-appellant. I. The First Department misconstrued the standards for defining and weighing a potential insured's "subjective" and "objective" knowledge. (*Seaboard Sur. Co. v Gillette Co.,* 64 NY2d 304; *Vander Veer v Continental Cas. Co.,* 34 NY2d 50; *Mt. Airy Ins. Co. v Thomas E. Angst & Assoc., P.C.,* 954 F Supp 1040; *Justofin v Metropolitan Life Ins. Co.,* 372 F3d 517;

*National Union Ins. Co. of Pittsburgh, Pa. v Holmes & Graven,* 23 F Supp 2d 1057; *Professional Mgrs., Inc. v Fawer, Brian, Hardy & Zatzkis,* 799 F2d 218; *Coregis Ins. Co. v McCollum,* 961 F Supp 1572.) II. Pepper Hamilton LLP's suppression of material information on its applications warrants rescission of the policies issued by Continental Casualty Company. (*Process Plants Corp. v Beneficial Natl. Life Ins. Co.,* 53 AD2d 214; *Kagan v United States Life Ins. Co.,* 21 AD2d 846; *Alvarez v Prospect Hosp.,* 68 NY2d 320; *Zuckerman v City of New York,* 49 NY2d 557; *Bauer v Whispering Hills Assoc.,* 210 AD2d 569; *Smalls v Reliable Auto Serv.,* 205 AD2d 523; *Matinchek v John Alden Life Ins. Co.,* 93 F3d 96; *Jung v Nationwide Fire Ins. Co.,* 949 F Supp 353.) III. The First Department erred in rejecting, as a matter of law, evidence demonstrating the materiality of Pepper Hamilton LLP's suppression. (*Feldman v Friedman,* 241 AD2d 433; *Chicago Ins. Co. v Kreitzer & Vogelman,* 210 F Supp 2d 407; *Bleecker St. Health & Beauty Aids, Inc. v Granite State Ins. Co.,* 11 Misc 3d 1091[A], 2006 NY Slip Op 50817[U]; *In re WorldCom, Inc. Sec. Litig.,* 354 F Supp 2d 455; *Arnav Indus., Inc. Retirement Trust v Brown, Raysman, Millstein, Felder & Steiner,* 96 NY2d 300; *Continental Cas. Co. v Graham & Schewe,* 339 F Supp 2d 723; *Westport Ins. Corp. v Gionfriddo,* 524 F Supp 2d 167; *Commonwealth Land Tit. Ins. Co. v IDC Props., Inc.,* 524 F Supp 2d 155; *Admiral Ins. Co. v Debber,* 442 F Supp 2d 958; *In re Marvel Entertainment Group, Inc.,* 140 F3d 463.)

*Hogan & Hartson LLP* (*Catherine E. Stetson,* of the District of Columbia bar, admitted pro hac vice, and *Jessica L. Ellsworth* of counsel), and *Edwards Angell Palmer & Dodge LLP,* New York City (*Ira G. Greenberg, John F. McCarrick, Samuel B. Mayer* and *Scott H. Casher* of counsel), for Twin City Fire Insurance Company, third-party defendant-appellant. Under the correct legal standard for applying a prior knowledge exclusion, Twin City Fire Insurance Company's denial of coverage to Pepper Hamilton LLP was proper. (*Coregis Ins. Co. v Baratta & Fenerty, Ltd.,* 264 F3d 302; *Selko v Home Ins. Co.,* 139 F3d 146; *Colliers Lanard & Axilbund v Lloyds of London,* 458 F3d 231; *Westport Ins. Corp. v Lilley,* 292 F Supp 2d 165; *MBIA Ins. Corp. v Royal Indem. Co.,* 426 F3d 204; *Mt. Airy Ins. Co. v Thomas,* 954 F Supp 1073; *Ehrgood v Coregis Ins. Co.,* 59 F Supp 2d 438; *Coregis Ins. Co. v Wheeler,* 24 F Supp 2d 475; *Coregis Ins. Co. v McCollum,* 961 F Supp 1572; *Fujitsu Ltd. v Federal Express Corp.,* 247 F3d 423.)

*Cahill Gordon & Reindel LLP,* New York City (*Charles A. Gilman* and *Christopher A. Gorman* of counsel), and *Dickstein Shapiro LLP* (*Randy Paar* and *Edward Tessler* of counsel) for Pepper Hamilton LLP and another, respondents and third-party plaintiffs-respondents. I. Disputed issues of material fact preclude summary judgment. (*Winegrad v New York Univ. Med. Ctr.,* 64 NY2d 851; *Friends of Animals v Associated Fur Mfrs.,* 46 NY2d 1065; *Patrolmen's Benevolent Assn. of City of N.Y. v City of New York,* 27 NY2d 410; *Sillman v Twentieth Century-Fox Film Corp.,* 3 NY2d 395; *Ferrante v American Lung Assn.,* 90 NY2d 623; *Colliers Lanard & Axilbund v Lloyds of London,* 458 F3d 231; *Sacher v Long Is. Jewish-Hillside Med. Ctr.,* 142 AD2d 567.) II. Twin City Fire Insurance Company and Executive Risk Indemnity Inc. fail to satisfy their heavy burdens to prove a prior knowledge exclusion to insurance coverage. (*Belt Painting Corp. v TIG Ins. Co.,* 100 NY2d 377; *Ace Wire & Cable Co. v Aetna Cas. & Sur. Co.,* 60 NY2d 390; *Westview Assoc. v Guaranty Natl. Ins. Co.,* 95 NY2d 334; *Continental Cas. Co. v Rapid-American Corp.,* 80 NY2d 640; *United Natl. Ins. Co. v Granoff, Walker & Forlenza, P.C.,* 598 F Supp 2d 540; *Selko v Home Ins. Co.,* 139 F3d 146; *Westport Ins. Corp. v Hanft & Knight, P.C.,* 523 F Supp 2d 444; *Coregis Ins. Co. v Wheeler,* 24 F Supp 2d 475.) III. Even if a trier of fact were to determine that Pepper Hamilton LLP had prior knowledge, the Westport Insurance Corporation primary policy mandates coverage under the 2001/2002 insurance program. (*Retirement Fund of Fur Mfg. Indus. v Republic Ins. Co.,* 755 F Supp 625; *DiLuglio v New England Ins. Co.,* 959 F2d 355; *DeVanzo v Newark Ins. Co.,* 37 NY2d 733.) IV. Continental Casualty Company is not entitled to rescission of its policies. (*Fidelity & Guar. Ins. Underwriters, Inc. v Jasam Realty Corp.,* 540 F3d 133; *First Financial Ins. Co. v Allstate Interior Demolition Corp.,* 193 F3d 109; *Justofin v Metropolitan Life Ins. Co.,* 372 F3d 517; *Mt. Airy Ins. Co. v Thomas E. Angst & Assoc., P.C.,* 954 F Supp 1040; *Almap Holdings v Bank Leumi Trust Co. of N.Y.,* 196 AD2d 518, 83 NY2d 754; *Coolspring Stone Supply, Inc. v American States Life Ins. Co.,* 10 F3d 144; *United Natl. Ins. Co. v Granoff, Walker & Forlenza, P.C.,* 598 F Supp 2d 540; *Chicago Ins. Co. v Halcond,* 49 F Supp 2d 312; *Montgomery v Federal Ins. Co.,* 836 F Supp 292; *Matinchek v John Alden Life Ins. Co.,* 93 F3d 96.)

*Walker Wilcox Matousek, LLP* (*Robert P. Conlon* and *Joyce F. Noyes,* of the Illinois bar, admitted pro hac vice, of counsel), and *Garbarini & Scher, P.C.,* New York City (*William D. Buckley* and *Gregg D. Weinstock* of counsel), for Westport Insurance

Corporation, respondent. I. The First Department's decision incorporated the correct finding that the tolling agreement constituted a "claim." (*Gurfein Bros. v Hanover Ins. Co.*, 248 AD2d 227; *Caguas Cent. Fed. Sav. Bank v United States*, 215 F3d 1304.) II. If this Court concludes that the tolling agreement did not constitute a claim, further discovery is necessary to determine whether a claim was otherwise made on or before April 27, 2004. (*Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494; *Groves v Land's End Hous. Co.*, 80 NY2d 978; *OK Petroleum Distrib. Corp. v Nassau/Suffolk Fuel Oil Corp.*, 17 AD3d 551; *Metichecchia v Palmeri*, 23 AD3d 894.) III. In the event Pepper Hamilton LLP's notice was of a potential claim, the First Department's reversal on the prior knowledge exclusion precludes relation back prior to year three. IV. In the event Pepper Hamilton LLP's notice was of a potential claim, questions of fact remain regarding when Pepper Hamilton LLP *first* became aware of a potential claim.

*Harkins Cunningham LLP,* Philadelphia, Pennsylvania (*Marianne Consentino, John G. Harkins, Jr.,* and *Benjamin M. Gerber* of counsel), for Philadelphia Bar Association, amicus curiae. I. Insurance policy disclosures are about whether the law firm has done something wrong—not about whether the client has. (*Selko v Home Ins. Co.*, 139 F3d 146; *Coregis Ins. Co. v Baratta & Fenerty, Ltd.*, 264 F3d 302; *Westport Ins. Corp. v Hanft & Knight, P.C.*, 523 F Supp 2d 444; *United Natl. Ins. Co. v Granoff, Walker & Forlenza, P.C.*, 598 F Supp 2d 540.) II. The motion court's approach will impermissibly strain Pennsylvania lawyers' relations with their clients. III. The motion court's approach will inappropriately and substantially burden Pennsylvania lawyers. (*Selko v Home Ins. Co.*, 139 F3d 146; *Coregis Ins. Co. v Baratta & Fenerty, Ltd.*, 264 F3d 302.)

**OPINION OF THE COURT**

JONES, J.

We are asked to determine, under Pennsylvania law, whether excess insurers Executive Risk Indemnity Inc. and Twin City Fire Insurance Company, based upon their prior knowledge exclusions, and Continental Casualty Company, based upon rescission of its policies, were entitled to summary judgment declaring that they have no obligation to indemnify defendants Pepper Hamilton LLP and one of its members W. Roderick Gagné (collectively, the law firm defendants) in actions asserted against them for, among other claims, professional malpractice.

We conclude that the prior knowledge exclusions apply and modify the order of the Appellate Division by granting summary judgment to Executive Risk and Twin City. We also conclude that Continental Casualty is not entitled to summary judgment on the basis of rescission.

## Facts and Procedural History

The underlying actions arose out of the law firm defendants' representation of nonparties Student Finance Corporation (SFC), its principal, Andrew Yao, and Royal Indemnity Company. In 1992, Yao founded SFC, a company that serviced the vocational portion of the student loan market. SFC financed loans to students attending vocational schools and acquired student loans from other lenders. It pooled those loans into certificates and sold them to investors. Defendant Gagné, then an associate of a nonparty law firm, assisted with SFC's formation in 1992 and its securitization in 1996. In 1996, Gagné became a member of Pepper Hamilton, a law firm based in Philadelphia, and brought Yao and SFC with him as clients. In the course of Pepper Hamilton's representation of SFC, the law firm prepared eight private placement memoranda in 2000 and 2001, which SFC used in connection with the sale of certificates totaling more than $465 million. Gagné also participated in discussions concerning SFC's operations with Yao. Royal Indemnity, a client of Pepper Hamilton, provided SFC with credit risk insurance for the pooled loans from 1999 to 2001.

From April 27, 2001 to October 27, 2002, Pepper Hamilton had two policies, $20 million of primary coverage under the Westport policy and $30 million of excess coverage under the Continental Casualty policy. In October 2002, the law firm decreased its coverage from $50 million to $40 million and obtained policies with two additional insurers, Executive Risk and Twin City. In the subsequent years, from October 27, 2002 to October 27, 2003 and October 27, 2003 to October 27, 2004, Westport issued a $10 million primary coverage policy to Pepper Hamilton, and Twin City, Executive Risk and Continental Casualty each issued Pepper Hamilton $10 million of excess coverage. Each excess policy substantially incorporated the terms, conditions, warranties and exclusions of the Westport policy.

The Westport policy* excludes:

> "any act, error, omission, circumstance or PERSONAL INJURY occurring prior to the effective date of this POLICY if any INSURED at the effective date knew or could have reasonably foreseen that such act, error, omission, circumstance or PERSONAL INJURY might be the basis of a CLAIM. This exclusion does not apply to any INSURED who had no knowledge or could not have reasonably foreseen that such act, error, omission, circumstance or PERSONAL INJURY might be the basis of a claim."

In March 2002, months before Executive Risk and Twin City issued their respective policies to Pepper Hamilton, the law firm defendants learned that SFC had been involved in securities fraud in failing to disclose the forbearance payments. Yao informed Gagné that SFC was inaccurately representing its default rate to make its certificates appear more attractive to investors, underwriters and credit risk insurers. Specifically, SFC made forbearance payments from its reserve accounts on student loans that were more than 90 days past due. Pepper Hamilton continued to represent SFC until April 2002.

On July 22, 2002, Chubb Wilcox, Pepper Hamilton's general counsel and insurance procurer, sent a memorandum to Pepper Hamilton attorneys regarding the firm's insurance application and inquired whether any person was "aware of any fact or circumstance, act, error, omission or personal injury which might be expected to be the basis of the claim or suit for lawyers professional liability." On August 6, 2002, Gagné responded: "I am aware [of] the Student Finance Corporation transactions of which you are familiar . . . [T]wo law suits have been filed in two different states and to date, we have not been named in either action. I am not certain as to whether we will be joined in the future." On September 6, 2002, Pepper Hamilton submitted a signed and dated insurance application to Westport, which did not include information concerning SFC, and in a letter to Twin City, dated October 25, 2002, Pepper Hamilton warranted that it had no material changes to its application. Pepper Hamilton

---

* This policy is a claims made policy, which "protects against claims made during the life of a policy irrespective of when the act giving rise to the claim occurred" (*Pizzini v American Intl. Specialty Lines Ins. Co.*, 210 F Supp 2d 658, 668 [ED Pa 2002]). The policy uniquely provides continuous and uninterrupted coverage.

did not disclose information concerning SFC to any of its insurers.

Eventually, SFC was forced into bankruptcy. In April 2004, Pepper Hamilton received a proposed tolling agreement from SFC's bankruptcy trustee, which advised that valid claims and causes of action could be brought against Pepper Hamilton "on behalf of the estate and/or creditors of" SFC. Pepper Hamilton immediately contacted its primary insurer Westport and excess insurers Executive Risk, Twin City and Continental Casualty and informed them of the potential claims.

In 2004 and 2005, the bankruptcy trustee and Royal Indemnity brought separate actions against the law firm defendants, alleging, among other claims, breach of fiduciary duty, negligent misrepresentation and professional malpractice. Pepper Hamilton's primary insurer, Westport, did not contest its obligation to defend. However, the excess insurers denied coverage.

Executive Risk commenced this action against the law firm defendants and Westport, seeking a declaration that it had no obligation to indemnify defendants in the underlying actions. The law firm defendants counterclaimed for a declaration in their favor and brought third-party claims against Twin City and Continental Casualty. Executive Risk and Twin City relied upon Westport's prior knowledge exclusion, expressly incorporated into their policies, and Continental Casualty cross-claimed for rescission of its excess policies for 2002-2003 and 2003-2004.

Supreme Court granted summary judgment in favor of the excess insurers. The court declared that, based on the policies' prior knowledge exclusions, which deny professional liability coverage for undisclosed acts that were known to the insured prior to the inception of the policies and exposed the insured to professional liability claims, Executive Risk and Twin City had no obligation to indemnify the law firm defendants in the underlying actions. Additionally, Supreme Court rescinded the law firm defendants' 2002-2003 and 2003-2004 Continental Casualty professional liability policies because they did not disclose information, during the renewal periods of those policies, concerning known acts that exposed them to the underlying professional liability claims. The court further declared that the underlying actions were not covered under the 2001-2002 Continental Casualty policy. The Appellate Division reversed the Supreme Court order and denied all motions and a cross motion for summary judgment (56 AD3d 196 [2008]). The

Appellate Division granted the excess insurers leave to appeal and certified the following question to this Court: "Was the order of this Court, which reversed the order of the Supreme Court, properly made?" We now modify and answer the certified question in the negative.

## Analysis

### Prior Knowledge Exclusions

Under Pennsylvania law, the insured has the burden of proving that its claim falls "within the policy's affirmative grant of coverage" (*Koppers Co., Inc. v Aetna Cas. & Sur. Co.*, 98 F3d 1440, 1446 [3d Cir 1996]). The insurer, however, carries "the burden of proving the applicability of any exclusions or limitations on coverage" (*id.*). A court must consider the following two-pronged test when determining whether a prior knowledge exclusion applies. It must "first . . . consider the subjective knowledge of the insured and then the objective understanding of a reasonable attorney with that knowledge" (*Coregis Ins. Co. v Baratta & Fenerty, Ltd.*, 264 F3d 302, 306 [3d Cir 2001]). Specifically, "it must be shown that the insured knew [prior to the effective date of the policy] of certain facts" that occurred prior to that effective date (*id.*, quoting *Selko v Home Ins. Co.*, 139 F3d 146, 152 [3d Cir 1998]). Then, a court must determine that a "reasonable lawyer in possession of such facts would have had a basis to believe that the insured" might expect such facts to be the basis of a claim against the insured (*id.*).

■ Here, it is undisputed that the law firm defendants knew of SFC's securities fraud months prior to the effective dates of the Executive Risk and Twin City policies. The courts below noted that Gagné subjectively believed, and informed Mr. Wilcox at least one month prior to the submission of one of the law firm's insurance applications, that he and the law firm could be subject to a lawsuit from their representation of SFC. Such a belief, although subjective, was also reasonable, but Pepper Hamilton did not provide that information to its insurers. Given the law firm defendants' role in the securitization of the loans and Gagné's close involvement with SFC, a reasonable attorney with the law firm defendants' knowledge should have anticipated the possibility of a lawsuit, particularly when millions of dollars may have been lost from activities of which they were aware. Here, the law firm's knowledge of its client's fraudulent payments prior to its application for excess coverage coupled

with the fact that a reasonable attorney would have concluded that the law firm defendants would likely be included in the litigation because of their role in their client's business satisfy the test of *Coregis* and create an obligation for the law firm to inform its insurers of this potential litigation.

Contrary to the Appellate Division's holding, the prior knowledge exclusion in this case does not require the known-of act, error, omission or circumstance to be "wrongful conduct on the part of the insured" (*Executive Risk Indem. Inc. v Pepper Hamilton LLP*, 56 AD3d 196, 204 [1st Dept 2008]). It excludes coverage of "any act, error, omission [or] circumstance . . . occurring prior to the effective date of [the policy] if any [insured] at the effective date knew or could have reasonably foreseen that such act, error, omission [or] circumstance . . . might be the basis of a [claim]." Here, on October 27, 2002, the effective date of the Executive Risk and Twin City policies, the law firm defendants knew of acts that occurred prior to that date, which they could have foreseen to be the basis of a claim. Thus, the prior knowledge exclusions apply to those policies.

### Rescission

It is well-settled under Pennsylvania law that rescission of an insurance policy may occur only if the (1) applicant made a false statement, (2) the false statement was material to the risk, (3) the applicant knew the statement was false and (4) the statement was made in bad faith (*Allstate Ins. Co. v Stinger*, 400 Pa 533, 540-541, 163 A2d 74, 78 [1960]). The insurer must prove all elements by clear and convincing evidence (*Justofin v Metropolitan Life Ins. Co.*, 372 F3d 517, 521 [3d Cir 2004]). Pennsylvania recognizes an omission as a false representation in the context of insurance applications (*id.* at 522).

We agree with the Appellate Division that, even if the law firm defendants' omission of the SFC incident is a known false statement, Continental Casualty failed to establish as a matter of law that the false statement was material to the reinsurance determination and that the false statement was made in bad faith. Here, the self-serving affidavit of Continental Casualty's underwriter—that Pepper Hamilton's renewal application would have been treated differently had it disclosed the underlying circumstances which led to the denial of coverage—is insufficient to meet the insurer's heightened burden of proof. The Appellate Division correctly denied summary judgment on the issue of rescission.

Accordingly, the order of the Appellate Division should be modified, without costs, in accordance with the opinion herein and, as so modified, affirmed, and the certified question answered in the negative.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, READ and PIGOTT concur; Judge SMITH taking no part.

Order modified, etc.