■ LIBERTY INSURANCE UNDERWRITERS INC., Respondent, v CORPINA PIERGROSSI OVERZAT & KLAR LLP et al., Appellants. [913 NYS2d 31]—

Order, Supreme Court, New York County (Charles E. Ramos, J.), entered June 23, 2009, which, upon the parties' respective motions for summary judgment, granted plaintiff insurer's (the insurer) motion for summary judgment and declared that it is not obligated to defend or indemnify defendant attorneys (the attorneys) in an underlying action for legal malpractice, unanimously modified, on the law, to deny the insurer's motion, and otherwise affirmed, with costs.

The insurer argues that it is not obligated to defend or indemnify the attorneys because, prior to the effective date of the first legal malpractice policy issued by the insurer to the attorneys in July 2004, the attorneys had a reasonable basis to foresee that a former client would make a claim against them, and that coverage is therefore excluded under the policy's "Known Claims or Circumstances" clause. In relevant part, the clause excludes coverage for "any claim arising out of a wrongful act occurring prior to the policy period if . . . you had a reasonable basis to believe that you had breached a professional duty, committed a wrongful act, violated a Disciplinary Rule, engaged in professional misconduct, or to foresee that a claim would be made against you."

The underlying legal malpractice action arose out of the attorneys' representation of the former client in connection with a medical malpractice claim for personal injuries allegedly caused by vaccinations administered to the former client in 1991 when he was an infant. More specifically, the malpractice complaint alleges that the attorneys failed to meet a three-year deadline for filing a claim under the federal National Vaccine Injury Compensation Program (42 USC § 300aa-10 *et seq.* [the NVICP or the program]), and that their failure both foreclosed compensation under the NVICP and barred any civil actions for damages, including a medical malpractice action. The underlying representation apparently began in August 1993; it ended when the attorneys, without bringing an action, resigned from the representation in June 1994 after the three-year NVICP deadline had expired. In December 2006, the former client's at-

torney advised the attorneys by letter that he had been retained to prosecute a legal malpractice claim based on their failure to file a NVICP claim. The attorneys promptly notified the insurer of this letter, and the insurer has been representing the attorneys in the underlying legal malpractice action under a reservation of rights.

In arguing that the attorneys had a reasonable basis for foreseeing a claim by the former client, the insurer relies on a letter to the former client's father written in October 1993 by an associate employed by the attorneys. The associate confirmed a prior conversation in which he advised that an "important deadline" was approaching in January 1994. That is, after stating that the former client "may be entitled to compensation under the terms of the Vaccine Injury Compensation Program," the associate stated that "[i]n order to make a claim under this program, the petition must be filed within 36 months from the time symptoms first appeared." The associate requested complete copies of all applicable medical records "[i]n order to prepare a proper petition." In arguing the absence of any such reasonable basis, the attorneys stress what is not said in the associate's letter and rely on a June 1994 letter, written by one of the attorneys to the former client's father. That letter, which makes no mention of the NVICP, "confirm[ed]" a prior discussion in which the father had been advised that the attorneys "cannot represent your son in this potential medical malpractice action." The letter did not explain why the firm could not represent the former client, but went on to state that, assuming the information provided by the father was correct, the "statute of limitations will expire on January 22, 2001, based upon the statute of limitations of medical malpractice actions on behalf of infants." This shows, the attorneys argue, that they did not know that the failure to file a claim under NVICP would preclude a state court medical malpractice action. Because they did not know otherwise until after the inception of coverage—when they received the December 2006 claim letter—they maintain that the known-claims exclusion does not apply.

The parties agree that the burden is on the insurer to show the applicability of the known-claims exclusion and that a two-pronged test governs the applicability of the exclusion. Under that test, the court "must first . . . consider the subjective knowledge of the insured and then the objective understanding of a reasonable attorney with that knowledge" (*Executive Risk Indem. Inc. v Pepper Hamilton LLP*, 13 NY3d 313, 322 [2009] [construing Pennsylvania law] [internal quotation marks omitted]). More particularly, the first prong requires the insurer to

show the insured's knowledge of the relevant facts prior to the policy's effective date, and the second requires the insurer to show that a reasonable attorney "might expect such facts to be the basis of a claim" (*id.*; *see also Colliers Lanard & Axilbund v Lloyds of London*, 458 F3d 231, 237 [3d Cir 2006] [construing New Jersey law]).

The attorneys do not dispute the insurer's contention that the knowledge of the associate must be imputed to them. Nor do they dispute that the letter establishes that the associate knew both of NVICP and of a requirement that a petition be filed within three years of the first appearance of symptoms "[i]n order to make a claim under this program." Their contention is that the letter does not establish that they also knew that the failure to file a timely administrative claim under the program had the additional legal consequence of foreclosing any civil action for damages. As a matter of logic, this contention is plainly correct. The associate, of course, may have known this fact about the law, but the letter does not establish that he did know. Nor did anything else submitted in support of the insurer's motion establish that the associate (or any attorney at the firm) knew this legal fact. It may be that a competent attorney who became aware that making a claim under the program required a petition to be filed within a deadline would make sure he knew all the legal consequences of not meeting that deadline. What a competent, or reasonable, attorney would have known, however, is far from dispositive of the question of what the attorneys in fact knew.

The inference that the attorneys did know that the failure to file a petition in accordance with the NVICP would preclude a civil action for damages may be a reasonable one. The evidentiary support for that inference includes the fact that the statement in the June 1994 letter that the attorneys could not undertake the representation is unexplained. Moreover, the attorneys' assertion in their letter to the insurer after learning of the malpractice claim that they "were only investigating a medical malpractice claim," rather than an administrative claim, is at odds with the associate's request for copies of all medical records "[i]n order to [file] a proper petition [under the program]." Regardless of whether the inference is reasonable, it is not inescapable and it cannot be the basis for granting summary judgment to the insurer (*Branham v Loews Orpheum Cinemas, Inc.*, 8 NY3d 931, 932 [2007] [all favorable inferences must be drawn in favor of party opposing summary judgment]).

The insurer unpersuasively argues the irrelevance of the attorneys' reasonable expectation of a claim as a result of not fil-

ing a petition under the program. Contrary to its contention, the attorneys' insistence on the relevance of their actual ignorance of the legal consequences of not filing does not "entirely remove" the objective component of the test. Rather, the most that can be said is that in some cases the subjective prong of the test will be dispositive; the insured's lack of knowledge will make it unnecessary to consider the objective prong.

The insurer also objects that the attorneys "are in essence seeking to be rewarded for their ignorance . . . in connection with the medical malpractice action for which they were retained." The "reward" of coverage, however, is the necessary and intended consequence of a test with a subjective component. The insurer is in essence objecting to the practical reality that enables it to sell any malpractice coverage, including retroactive coverage on a claims made basis. To obtain protection from the consequences of their ignorance is a key reason why attorneys purchase and insurers are able to sell malpractice insurance. A purely objective test would provide insurers with far greater protection against the risks of both "adverse selection" (*see generally Simpson v Phoenix Mut. Life Ins. Co.*, 24 NY2d 262, 268-269 [1969]) and outright fraud. But if attorneys had to run that gauntlet to obtain coverage, they would have little or no reason to buy malpractice insurance. After all, the promised retroactive coverage would be illusory if it could be denied solely because a reasonable attorney would have known at the time of the act or omission that a malpractice claim could be made (*cf. Colliers Lanard*, 458 F3d at 242 ["retroactive coverage for professional errors would be illusory if such coverage could be denied on the ground that a reasonable professional would have known that the error had been committed prior to obtaining the policy"]).

Nor does the attorneys' position require insurers to provide coverage whenever the insured raises a claim of ignorance. The claim of ignorance might not be credible and the insurer, perhaps aided by discovery into the insured's handling of other cases, may be able to refute it. Moreover, ignorance at the time of the malpractice is not sufficient to entitle the insured to coverage. Rather, subject to the application of the objective prong, the insured will not be entitled to coverage if its ignorance is dispelled before the beginning of the policy period. Thus, as the attorneys concede, the exclusion would apply if they had learned at any time prior to the beginning of the policy period that the failure to file a petition under the program would foreclose a civil action for damages. In addition, although an attorney might not know that a particular act or omission would

result in the dismissal of the client's claim, the attorney might know (or be unable to deny knowing) that some adverse consequence would or was likely to result. In such a case, regardless of whether a malpractice claim was reasonably foreseeable, a reasonable attorney with that more limited knowledge might believe nonetheless that the attorney "had breached a professional duty, committed a wrongful act, violated a Disciplinary Rule, [or] engaged in professional misconduct." Indeed, as discussed below, the insurer makes a similar argument. For this additional reason, we disagree with the insurer's argument that the attorneys' position on the subjective prong "eviscerates" the objective prong.

Despite making that very argument, the insurer contends that "any reasonable lawyer with knowledge of the facts admittedly known to [the attorneys] would believe that the failure to timely file a claim [in accordance with the NVICP] would have some consequences and could lead to a malpractice claim against the lawyer." This fallback position also is unpersuasive. The reasonable lawyer who believed that not filing a petition under the program would affect only what he believed his client did not want, an administrative remedy, certainly would not expect to be a defendant in a malpractice action alleging that no civil action could be prosecuted because that petition had not been filed. Mere knowledge of "some consequences" is inconsequential. The attorneys' knowledge of the banality that actions have consequences does not provide "a reasonable basis to believe that [they] had breached a professional duty, committed a wrongful act, violated a Disciplinary Rule, [or] engaged in professional misconduct."

Just as we cannot draw against the attorneys the inference that they did know the actual consequences of not filing a petition under the program, we cannot draw against the insurer the inference that they did not know. For that reason alone, we reject the attorneys' argument that their cross motion for summary judgment should have been granted. To avoid confusion, we address briefly the attorneys' contention that "a mistaken belief that a professional did not commit malpractice is sufficient to avoid the [known-claims-or-circumstances] exclusion." Suffice it to say that if a reasonable attorney with the subjective knowledge of the insured would expect a claim against the insured on the basis of the facts known to the insured, coverage would be excluded regardless of any belief that no professional standards were violated.

Finally, the attorneys argue that the insurer should be estopped from disclaiming coverage because they have been

prejudiced by the insurer's delay in disclaiming. This argument is meritless as the insurer has never disclaimed coverage and has been defending the underlying malpractice action from the outset under an undisputedly timely reservation of rights (*see O'Dowd v American Sur. Co. of N.Y.*, 3 NY2d 347, 355 [1957]). Concur—Sweeny, J.P., McGuire, Renwick and Abdus-Salaam, JJ.