Allied World Assur. Co. (U.S.) Inc. v Golenbock Eiseman Assor Bell & Peskoe, LLP (2025 NY Slip Op 01421)

Allied World Assur. Co. (U.S.) Inc. v Golenbock Eiseman Assor Bell & Peskoe, LLP

2025 NY Slip Op 01421

Decided on March 13, 2025

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: March 13, 2025

Before: Manzanet-Daniels, J.P., Kapnick, Pitt-Burke, Rosado, O'Neill Levy, JJ. 

Index No. 653762/22|Appeal No. 3893|Case No. 2024-01377|

[*1]Allied World Assurance Company (U.S.) Inc., Plaintiff-Respondent,
v
Golenbock Eiseman Assor Bell & Peskoe, LLP, Defendant-Appellant.

Golenbock Eiseman Assor Bell & Peskoe LLP, New York (Michael M. Munoz of counsel), for appellant.
Wiley Rein LLP, Washington, DC (Emily S. Hart of the bar of the State of California, the State of Virginia, and the District of Columbia, admitted pro hac vice, of counsel), for respondent.

Order, Supreme Court, New York County (Joel M. Cohen, J.), entered October 30, 2023, which, to the extent appealed from as limited by the briefs, granted plaintiff's motion for summary judgment dismissing defendant's counterclaims and on its first and second causes of action declaring that there is no coverage for defendant under the subject policy because (i) the claim, as defined in the policy, predates the policy and (ii) the policy's prior knowledge condition is not satisfied, and denied defendant's cross-motion for summary judgment on its counterclaims and dismissing plaintiff's first and second causes of action, unanimously affirmed, without costs.
Defendant law firm represented nonparty Workspace, Inc. regarding certain real estate sales from 2015-2017. One of the properties, a unit in 106 Spring Street in Manhattan, sold in 2015, and by virtue of the sale the purchaser became a shareholder in Workspace. In November 2017, the purchaser sued Workspace in the action captioned 106 Spring Street LLC v. Workspace, Inc., index No. 657050/2017 [Sup Ct, New York County] (the 106 Spring Street Action), alleging that Workspace, by concealing certain documents and facts both during the 106 Spring Street sale and thereafter, acted to deprive the purchaser of significant monetary benefits in the pending sale of another of Workspace's properties at 93 Mercer Street in Manhattan. The 93 Mercer Street transaction never closed due to, among other things, the pendency of the 106 Spring Street Action, resulting in an alleged loss to Workspace's shareholders of more than $18 million.
In 2018, Workspace and defendant entered into a tolling agreement, which set forth that Workspace "believes that it may hold claims against [defendant] . . . and wishes to preserve the Claims — if any — until the final adjudication of the [106 Spring Street Action]." The tolling agreement also provided that defendant "believes that it may hold claims against Workspace for unpaid legal fees," and that "[t]he parties desire to avoid litigation at this time." Finally, the parties entered into the agreement "to toll the statute of limitation on their claims against one another at this time."
Years later, plaintiff insurer issued a claims-made policy to defendant for the period of August 1, 2021 to August 1, 2022. The policy expressly defined a "claim" to include "a request to toll or waive a statute of limitations made to or against any Insured seeking to hold such insured responsible for any Wrongful Act." The policy defines a Legal Services Wrongful Act as "any actual or alleged act, error or omission committed by any Insured, solely in the performance of or failure to perform Legal Services." Finally, the "No Prior Knowledge" condition precedent to coverage required that "prior to August 1, 2019, no Insured had any basis (1) to believe that any Insured had breached a professional duty; or (2) to foresee that any fact, circumstance, situation, transaction, event, or Wrongful Act [*2]might reasonably be expected to be the basis of a Claim against any Insured." Defendant did not disclose the tolling agreement or the related 106 Spring Street Action to plaintiff prior to the policy's issuance.
On August 3, 2021, Workspace initiated an action against defendant for legal malpractice allegedly committed from 2015 through 2017 in connection with the 106 Spring Street sale and the ultimately aborted 93 Mercer Sale (the Workspace Action).[FN1] On August 9, 2021, defendant requested coverage in the Workspace Action from plaintiff, and on August 27, 2021, plaintiff agreed to provide a defense while reserving its rights. During its investigation of the Workspace Action, plaintiff subsequently learned that defendant had entered, and failed to disclose, the tolling agreement in August 2018. On August 16, 2022, plaintiff insurer denied coverage to defendant on the grounds that the claim pre-dated the policy, and that the policy's no prior knowledge condition was not satisfied.
Supreme Court granted plaintiff's motion for summary judgment on its first two causes of action, declaring that there is no coverage for defendant under the policy because (i) the claim predates the policy, and (ii) the policy's prior knowledge condition was not satisfied. We affirm based on Supreme Court's reasoning.
While the Workspace Action was commenced during the policy's coverage term, the legal malpractice claims set forth in the action predate the policy's effective period. It is undisputed that defendant and Workspace, its former client, entered into the tolling agreement prior to the policy period, and defendant's argument that the tolling agreement is ambiguous or otherwise insufficient to constitute a "claim" is unavailing. The policy specifies that a tolling agreement seeking to hold defendant responsible for "any Wrongful Act" (including acts constituting legal malpractice) establishes a claim.
While it is true that the tolling agreement did not lay out in specific detail the claims Workspace was considering against defendant, the parties' only relationship was that of attorney-client, and the agreement explicitly referenced the 106 Spring Street Action, an action against Workspace involving a real estate transaction in which defendant represented Workspace. There is a clear connection between the 106 Spring Street Action, tolling agreement, and the Workspace Action, as the malpractice claims eventually asserted in the Workspace Action are predicated upon defendant's actions during the pre-agreement 106 Spring Street and 93 Mercer Street transactions. A Legal Services Wrongful Act, as defined in the policy, is therefore the only type of claim that reasonably could have been contemplated by the tolling agreement. Further, the policy's terms did not require that the tolling agreement spell out the proposed claims in detail. Thus, the tolling agreement constitutes a pre-policy claim pursuant to the terms of the policy, and plaintiff has no duty to defend [*3]defendant.
Plaintiff also properly denied coverage due to defendant's failure to satisfy the policy's "No Prior Knowledge" requirement. When analyzing "prior knowledge" provisions in professional liability insurance cases, New York courts apply a two-step subjective/objective knowledge test (Liberty Ins. Underwriters, Inc. v Corpina Piergrossi Overzat & Klar LLP, 78 AD3d 602, 604—605 [1st Dept 2010]). The Court must first determine whether the insured had subjective knowledge of relevant facts or circumstances indicating a potential claim prior to the policy's effective date (id. at 604, citing Executive Risk Indem. Inc. v Pepper Hamilton LLP, 13 NY3d 313, 322 [2009]). Second, the Court must determine whether a reasonable attorney "might expect such facts to be the basis of a claim" (Liberty Ins. Underwriters, Inc., 78 AD3d 605 [internal quotation marks omitted]).
The tolling agreement establishes that defendant had both subjective and objective knowledge of a potential legal malpractice claim sufficient to trigger an obligation to disclose such fact to plaintiff under the policy. The tolling agreement expressly states that Workspace believed it may hold claims against defendant, and that such claims were preserved pending the outcome of the 106 Spring Street Action. Lastly, defendant's own reserved claims for unpaid legal fees provide further support for such conclusion. Accordingly, by virtue of the tolling agreement and the parties' exclusive attorney-client relationship, defendant knew or should have known that Workspace sought to preserve its potential claims regarding defendant's legal representation during the transactions underlying the 106 Spring Street Action.
For these reasons, we affirm the lower court's order.
We have considered the remaining arguments and find them unavailing. 
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: March 13, 2025

Footnotes

Footnote 1: Workspace filed a summons with notice on August 3, 2021, and the complaint on April 1, 2022.