| **Hanover v Speaker** |
| --- |
| 2026 NY Slip Op 31018(U) |
| March 16, 2026 |
| Supreme Court, New York County |
| Docket Number: Index No. 805226/2023 |
| Judge: John J. Kelley |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:   **HON. JOHN J. KELLEY**

*Justice*

PART                                  56M

-------------------------------------------------------------------------------X

DANIEL HANOVER,

                         Plaintiff,

                - v -

MARK SPEAKER, M.D, TLC THE LASER CENTER, INC.,
doing business as TLC THE LASIK CENTER-NYC, LASER
AND CORNEA SURGERY ASSOCIATES, P.C., ALYSSA
MANCUSO, O.D., STEVEN SIEGEL, O.D., and DOES 1
Through 10, Inclusive,

                         Defendants.

-------------------------------------------------------------------------------X

INDEX NO.            805226/2023

MOTION DATE            11/21/2025

MOTION SEQ. NO.            006

**DECISION + ORDER ON
MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 006) 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 140, 141, 142, 143, 144, 145, 146, 147, 148, 149, 150, 151, 152, 153, 154

were read on this motion to/for            STRIKE PLEADINGS            .

     In this action to recover damages for medical malpractice based on alleged departures from good and accepted practice and lack of informed consent, the plaintiff moves pursuant to CPLR 3126 to strike the answer of the defendants Alyssa Mancuso, O.D., and Steven Siegel, O.D. (together the optometrist defendants), for their alleged failure timely to produce unredacted copies of the insurance policies that provided them with coverage for the malpractice claims asserted against them in this action.  The optometrist defendants oppose the motion.  The motion is granted to the extent that, on or before April 16, 2026, the optometrist defendants shall serve and file affirmations (a) from a representative of Lasik Insurance Company, Ltd., confirming that, notwithstanding any disclaimer of coverage based on specific policy exclusions, the insurance policies that it underwrote for LCA-Vision, Inc., and designated as Policy Numbers 396-PL-2020-00 and 396-PL-2023-00, were intended to provide coverage for the claims asserted by the plaintiff in the instant 2023 action, against the optometrist defendants, for conduct occurring in 2020, and (b) from Robert Dinga, O.D., or another knowledgeable person

**805226/2023   HANOVER, DANIEL vs. SPEAKER M.D., MARK ET AL**
**Motion No.  006**

Page 1 of 7

1 of 7

[* 1]

employed by LCA-Vision, Inc., or one of its subsidiaries or affiliates, attesting to whether or not

TLC The Laser Center, Inc., doing business as TLC The Lasik Center-NYC (TLC), had in effect

a separate policy of malpractice liability insurance that would cover them for claims made

against them by the plaintiff in this action, or that he or she has no knowledge as to that issue.

Unless the deadline is extended by the court for good cause shown, the optometrist defendants'

failure timely to do so will result in their preclusion from testifying or adducing other evidence at

trial in support of their defense. The plaintiff's motion is otherwise denied.

On November 19, 2024, this court conducted a remote compliance conference with the

attorneys for the non-defaulting parties, after which it directed the optometrist defendants to

"turn over insurance information within 30 days," but it did not issue a compliance conference

order. The optometrist defendants did not provide the plaintiff with that information in

accordance with the court's directive. After a subsequent compliance conference that was

conducted on February 24, 2025, the court, in a compliance conference order dated February

26, 2025, directed the optometrist defendants to produce their "respective insurance

information, policies and any umbrella policies within 30 days" of that order, in response to

which those defendants failed to produce the policies. Rather, in response to the plaintiff's April

2, 2025 good faith letter, the optometrist defendants produced declaration pages referable to

purported 2024 policies, despite the facts that (a) the alleged malpractice was committed in

2020 (which would be relevant to policies based on the date of loss) and (b) this action was

commenced in 2023 (which would be relevant to "claims-made" policies).

In an order dated September 24, 2025, and entered September 25, 2025 (MOT SEQ

004), this court granted the plaintiff's motion to impose sanctions upon the optometrist

defendants, but only to the extent that:

> "the defendants Alyssa Mancuso, O.D., and Steven Siegel, O.D., shall be
> precluded from adducing evidence in support of their defenses at trial unless, on
> or before October 22, 2025, they provide the plaintiff with a full, unredacted copy
> of the policy issued by Lasik Insurance Company, Ltd., to LCA-Vision, Inc., under
> Policy Number 396-PL-2020-00, effective from January 1, 2020 to January 1,

805226/2023   HANOVER, DANIEL vs. SPEAKER M.D., MARK ET AL                    Page 2 of 7
Motion No. 006

2 of 7

2021, along with fully unredacted copies of any other policies of insurance that provided liability coverage to the movants individually or an entity for whom they worked during calendar year 2020, and, if they should fail to comply with this directive, this conditional order shall become absolute, and the motion is otherwise denied."

In response to this order, the optometrist defendants, on or about October 10, 2025, provided the plaintiff with two unredacted "claims-made" insurance policies, issued by Lasik Insurance Company, Ltd., to LCA-Vision, Inc. (LCA-V), under Policy Numbers 396-PL-2020-00 and 396-PL-2023-00, respectively effective from January 1, 2020 to January 1, 2021, and January 1, 2023 to January 1, 2024. On November 5, 2025, the plaintiff made the instant motion, contending that the policies that were produced did not provide insurance to the optometrist defendants, inasmuch they were not employed by the named insured, LCA-V, but instead were employed by the defendant TLC, against whom the court already had granted the plaintiff's motion for leave to enter a default judgment on the issue of liability (MOT SEQ 003).

In opposition to the instant motion, the optometrist defendants submitted the affirmation of Robert Dinga, O.D., the vice president for clinical affairs of the insured entity, LCA-V, in which he attested that, in 2020, that is, "at the time of plaintiff's treatment," the optometrist defendants were employed by Lasikplus Medical of New York, P.C. (LPMNY), and that they continued "thereafter" to be employed by LPMNY. He averred that all "LasikPlus" and "TLC" centers located in New York fell "under the penumbra" of LPMNY, the latter of which was incorporated in New York in 2003. Dinga also asserted that TLC is a tradename and alter ego of Kismet NewVision Holdings, LLC (Kismet), which he asserted was not an entity related to any of the parties to this action. Dinga further stated that, even though TLC fell under the "penumbra" of LPMNY, LPMNY had no ownership interest in TLC, and also asserted, in somewhat contradictory fashion, that Kismet had no ownership interest in TLC as well, despite being a trade name and alter ego of TLC. He additionally adverted to the W2 wage and tax statements of the optometrist defendants, which indicated that, during 2022 and 2023, they actually were employed by an entity known as Lasikplus of New York Professional Corporation, a name

805226/2023   HANOVER, DANIEL vs. SPEAKER M.D., MARK ET AL                          Page 3 of 7
  Motion No.  006

3 of 7

distinct from both LCA-V *and* LPMNY, as well as distinct from TLC. Dinga asserted that, notwithstanding the difference between the names of the entity that he claimed employed those defendants, the entity identified on their W2 forms, the entity set forth in their curricula vitae and medical records, and the named insured,

> "LasikPlus maintains liability insurance coverage for its Optometrists, including Alyssa Mancuso, O.D. and Steven Siegel, O.D. Optometrists are not individually named on the insurance policies because every Optometrist who is or was employed by one of the named insured PCs are automatically covered under the policy. Instead, the policies automatically insured the Optometrists for the duration of their employment."

In reply, the plaintiff argued that Dinga's affirmation did not put the issue of insurance coverage to rest because the curricula vitae of the optometrist defendants recited that they had indeed worked for TLC during the relevant period of time, and that, inasmuch as no defendant has produced the relevant 2020 employment contracts of the optometrist defendants, the issue of the identity of their employer at that juncture remains an open question. The plaintiff's attorney explained that,

> "[b]y 2020, TLC Laser Eye Centers was part of a broader corporate group under Vision Group Holdings (doing business as LVI Intermediate Holdings, Inc.). *See* Voluntary Petition for Non-Individuals Filing for Bankruptcy, a copy of which is annexed hereto as Exhibit D. On May 29, 2020, prior to the Subject Surgery, LVI Intermediate Holdings filed for Chapter 11 in the U.S. Bankruptcy Court for the District of Delaware, along with many of its affiliates, including TLC entities. *Id*. Moreover, at all times relevant to this controversy, LCA has operated TLC and LASIKPlus as separate brands in New York. *See* Exhibits E and F, TLC's and LASIKPlus' webpages, respectively. Finally, Plaintiff's medical records, a copy of which is annexed hereto as Exhibit G, including his billing records, refer exclusively to TLC. *Id*., invoice of 'TLC The Laser Center (Northeast) Inc. dba TLC New York City' Bates stamped MS000038; 'provider' identified as 'TLC Vision Center, LLC,' Bates stamped MS000025. While Plaintiff's medical records refer extensively and exclusively to 'TLC,' nowhere do they refer to 'LASIKPlus.'"

The optometrist defendants served a sur-reply, which the court declines to consider, inasmuch as they did not obtain prior court approval therefor (*see* 22 NYCRR 202.8-c; *Zyskowski v Chelsea-Warren Corp.*, 238 AD3d 498, 499 [1st Dept 2025]).

A "claims-made" liability insurance policy, such as the two subject policies issued by Lasik Insurance Company, Ltd., to LCA-V, is one which will cover the insured during the

**805226/2023 HANOVER, DANIEL vs. SPEAKER M.D., MARK ET AL**
Page 4 of 7
**Motion No. 006**

[* 4]
4 of 7

contractual period of coverage, provided that the claim is made or an action is commenced against the insured during that period (see *Madison Sq. Boys & Girls Club, Inc. v Atlantic Specialty Ins. Co.,* 204 AD3d 539, 540 [1st Dept 2022]; *United Specialty Ins. v Columbia Cas. Co.*, 186 AD3d 650, 651 [2d Dept 2020]). A claims-made policy "'protects against claims made during the life of a policy *irrespective of when the act giving rise to the claim occurred'*" (*Executive Risk Indem. Inc. v Pepper Hamilton, LLP*, 13 NY3d 313, 320, n [2009], quoting *Pizzini v American Intl. Specialty Lines Ins. Co.*, 210 F Supp 2d 658, 668 [ED Pa 2002] [emphasis added]). Although the alleged malpractice here was committed in 2020, LCA-V had a claims-made liability insurance policy in effect from January 1, 2023 until January 1, 2024, which, if it in fact covered the optometrist defendants' alleged negligence, would cover the claims that were interposed against them in the instant action on April 19, 2023, when the relevant claims were "made." The plaintiff is entitled to know whether his claims will be covered by that policy, and, more particularly, whether the policies of insurance issued to LCA-V are in fact presently covering the claims asserted against the optometrist defendants. Indeed, that is the basis for the plaintiff's continued requests to compel production of relevant insurance policies, the provisions in this court's case management orders, and the plaintiff's motions to compel or sanction the optometrist defendants for failing to provide the policies.

The court concludes that, although Dinga's affirmation and his testimony in an unrelated Colorado action addressed some of the questions regarding coverage, they do not clear up all of them. It appears that he is merely assuming---based on his understanding of the corporate relationships between LCA-V, LPMNY, Lasikplus of New York Professional Corporation, and TLC---that the subject policies covered the optometrist defendants in this 2023 action seeking to recover for malpractice that they allegedly committed in 2020. In most dental malpractice actions in which insurance is involved, the insurance carrier is responsible for retaining the attorneys for the insured defendants; if the attorneys representing the optometrist defendants here have, in fact, been retained by Lasik Insurance Company, Ltd., both the insurer and its

805226/2023   HANOVER, DANIEL vs. SPEAKER M.D., MARK ET AL
Motion No.  006

Page 5 of 7

[* 5]

retained attorneys would certainly know whether coverage was intended to include the optometrist defendants, subject to disclaimers that might be invoked based on policy exclusions, as opposed to lack of coverage. Nonetheless, in light of the confusion created by the differing names of the four entities under which the optometrist defendants rendered, or may have rendered, treatment to the plaintiff, and in light of the fact that only one of those entities is named as the insured in the subject policies, it is crucial that the plaintiff and the court be provided with an affirmation or affidavit from a representative of Lasik Insurance Company, Ltd., either confirming or denying that the optometrist defendants are indeed being covered by the subject policies. The court also directs the defendant optometrists to provide an additional affirmation or affirmation from Dinga, or someone else with personal knowledge, as to whether any policy of insurance *had been issued to TLC* that would or might cover the claims asserted by the plaintiff here. Consequently, the court directs the optometrist defendants to submit such affirmations or affidavits on or before April 16, 2026.

Since the optometrist defendants produced full, unredacted copies of insurance policies that they believed were fully responsive both to the plaintiff's demand and this court's September 24, 2025 order, and those policies may, in fact, turn out to be fully responsive thereto, the court concludes that they have not engaged in willful or contumacious behavior that warrants the imposition of any sanction. Hence, that branch of the motion seeking to strike the answer of the optometrist defendants, or to impose any other sanction, is denied.

Accordingly, it is,

ORDERED that the plaintiff's motion is granted only to the extent that, on or before April 16, 2026, the defendants Alyssa Mancuso, O.D., and Steven Siegel, O.D., shall serve and file affirmations or affidavits from

(a) a representative of Lasik Insurance Company, Ltd., confirming that, notwithstanding any disclaimer of coverage it may have asserted based on express policy exclusions, the insurance policies that it underwrote for LCA-Vision, Inc., and which were designated as Policy Numbers 396-PL-2020-00 and 396-PL-2023-00, were intended to cover the claims asserted by the

805226/2023  HANOVER, DANIEL vs. SPEAKER M.D., MARK ET AL
Motion No. 006

Page 6 of 7

6 of 7

plaintiff in the instant 2023 action against those defendants for conduct occurring in 2020; and

    (b) Robert Dinga, O.D., or another knowledgeable person employed by LCA-Vision, Inc., or one of its subsidiaries or affiliates, attesting to whether or not TLC The Laser Center, Inc., doing business as TLC The Lasik Center-NYC, had in effect an independent or separate policy of malpractice liability insurance that would cover the defendants Alyssa Mancuso, O.D., and Steven Siegel, O.D., for claims made against them by the plaintiff in this action, or that Robert Dinga, O.D., or such other knowledgeable person has no specific knowledge as to whether such a policy had been issued,

the failure of the defendants Alyssa Mancuso, O.D., and Steven Siegel, O.D., serve and file such affirmations or affidavits in a timely fashion will result in this conditional order becoming absolute, thus precluding them from testifying or adducing other evidence in support of their defense at trial, and the plaintiff's motion is otherwise denied.

    This constitutes the Decision and Order of the court.

| | |
|---|---|
| **3/16/2026** | |
| **DATE** | **JOHN J. KELLEY, J.S.C.** |

| CHECK ONE: | ☐ CASE DISPOSED | | ☒ NON-FINAL DISPOSITION | |
|---|---|---|---|---|
| | ☐ GRANTED | ☐ DENIED | ☐ GRANTED IN PART | ☒ OTHER |
| APPLICATION: | ☐ SETTLE ORDER | | ☐ SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |

**805226/2023   HANOVER, DANIEL vs. SPEAKER M.D., MARK ET AL**
**Motion No.  006**

    **Page 7 of 7**

[* 7]