**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | |
|---|---|
| MOTIVE TECHNOLOGIES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. N25C-01-334 |
| ) | SKR CCLD |
| ASSOCIATED INDUSTRIES INSURANCE ) | |
| COMPANY, INC., VANTAGE RISK ) | |
| SPECIALITY INSURANCE COMPANY, ) | |
| ALLIANZ UNDERWRITERS INSURANCE ) | |
| COMPANY, ARCH SPECIALTY ) | |
| INSURANCE COMPANY, and FORTEGRA ) | |
| SPECIALTY INSURANCE COMPANY ) | |
| ) | |
| Defendants. ) | |

Submitted: August 1, 2025
Decided: September 5, 2025

*Upon Plaintiff's Motion for Partial Summary Judgment*
**GRANTED in part, DENIED in part**

*Upon Certain Defendants' Motion for Summary Judgment*
**GRANTED in part, DENIED in part**

<u>**MEMORANDUM OPINION AND ORDER**</u>

Jennifer C. Wasson, Esq., Ryan D. Kingshill, Esq., POTTER ANDERSON & CORROON LLP, Wilmington, Delaware, Robin L. Cohen, Esq., Adam S. Ziffer, Esq., W. Alex Harris, Esq., Shafkat Rakib, Esq., COHEN ZIFFER FRENCHMAN & MCKENNA LLP, New York, New York. *Attorneys for Plaintiff Motive Technologies, Inc.*

Christopher B. Chuff, Esq., Emily L. Wheatley, Esq., TROUTMAN PEPPER LOCKE LLP, Wilmington, Delaware. Matthew T. Furton, Esq., Molly McGinnis Stine, Esq., TROUTMAN PEPPER LOCKE LLP, Chicago, Illinois. *Attorneys for Defendant Associated Industries Insurance Company.*

John C. Phillips, Jr., Esq., David A. Bilson, Esq., PHILLIPS, MCLAUGHLIN & HALL P.A., Wilmington, Delaware, Cara Tseng Duffield, Esq., Bonnie Thompson, Esq., LAVIN RINDNER DUFFIELD LLC, Washington, DC. *Attorneys for Defendants Vantage Risk Specialty Insurance Co., Allianz Underwriters Insurance Co., Arch Specialty Insurance Co., and Fortegra Specialty Insurance Co.*

**RENNIE, J.**

## I.   INTRODUCTION

This is an insurance coverage dispute between Plaintiff Motive Technologies Inc. ("Motive") and several insurance companies.[1]   Defendant Associated Industries Insurance Company, Inc. ("Associated"), sold Motive cyber liability insurance providing coverage for the period of August 12, 2023, to August 12, 2024 (the "Primary Policy").[2]  Defendants Vantage Risk Specialty Insurance Co., Allianz Underwriters Insurance Co., Arch Specialty Insurance Co., and Fortegra Specialty Insurance Co. (collectively "Excess Insurers", together with Associated, "Insurers"), collectively issued Motive an excess policy for the same period (the "Excess Policy", together with the Primary Policy, the "Policies").[3]  Generally, the Policies provide coverage for a variety of losses attributable to Motive's digital conduct.[4]

Motive seeks coverage, including defense costs, for an ongoing lawsuit filed by its competitor Samsara, Inc. ("Samsara") (the "Samsara Action").[5]   Samsara accused Motive of stealing its products, misappropriating confidential information, patent infringement, and commissioning false studies to disparage Samsara

---

[1] *See generally* Complaint (hereafter "Compl.") (D.I. 1).
[2] *See* Compl., Ex. A (hereafter "Primary Policy").
[3] *See* Compl., Ex. B (hereafter "Excess Policy").
[4] *See* Primary Policy at 1.  The Excess Policy provides coverage "subject to the provisions, terms, conditions, exclusions, and endorsements of the [Primary] Policy except as provided otherwise." Excess Policy § 2.  Accordingly, the Court generally references the Primary Policy when discussing the dispute, while noting where the Excess Policy further restricts coverage.
[5] *See* Compl. ¶¶ 3, 6-10, 75-117.

services.[6] Motive also argues that the Policies indemnify costs associated with its largely reciprocal, affirmative suit against Samsara (the "Motive Action", together with the Samsara Action, the "Actions").[7] Insurers contend that several exclusions in the Policies bar coverage for the Actions.[8]

Before the Court are Motive's Motion for Partial Summary Judgment on Insurers' Defense Obligations ("Motive's Motion"), and Excess Insurers' Motion for Summary Judgment ("Excess Insurers' Motion").[9] Motive's Motion seeks a declaration that Insurers must reimburse Motive's defense costs for the Actions.[10] Insurers oppose Motive's Motion, arguing that the Policies exclude coverage for the Actions.[11] Additionally, Insurers argue that Motive's Motion is premature because discovery has just commenced and the applicability of certain exclusions is a factual issue.[12]

---

[6] *See* Excess Insurers' Opening Brief in Support of Their Motion for Summary Judgment and Answering Brief in Opposition to Plaintiff's Motion for Partial Summary Judgment on Insurers' Defense Obligations (hereafter "Excess Insurers MSJ"), Ex. 9 (hereafter "Samsara Compl."); Ex. 10 (hereafter "Samsara Amend. Compl.") (D.I. 56).

[7] *See* Compl. ¶¶ 4, 6-10, 75-117; Plaintiff's Brief in Support of Its Motion for Partial Summary Judgment on Insurers' Defense Obligations (hereafter "Motive MSJ"), Ex. 2 (hereafter "Motive Action Compl.") (D.I. 33).

[8] *See, e.g.*, Defendant Associated Industries Insurance Company, Inc's Answer and Affirmative Defenses (hereafter "Associated Answer") (D.I. 32).

[9] *See* Motive MSJ; Excess Insurers MSJ.

[10] *See generally* Motive MSJ.

[11] *See* Excess Insurers MSJ at 16-26, 32-36; Associated Industries Insurance Company, Inc's Answering Brief in Opposition to Plaintiff's Motion for Partial Summary Judgment on Insurers' Defense Obligations (hereafter "Motive MSJ Opp'n") at 22-32.

[12] *See* Excess Insurers MSJ at 27-32; Motive MSJ Opp'n at 32-35.

Excess Insurers' Motion asks the Court to hold that the Excess Policy's Prior and Pending Litigation exclusion bars coverage for the Actions.[13]  Motive disagrees with Excess Insurers' arguments.[14]  For the reasons that follow, the Court **GRANTS** in part, **DENIES** in part Motive's Motion and **GRANTS** in part, **DENIES** in part Excess Insurers' Motion.

## II.    BACKGROUND

### A. The Parties, Relevant Non-Parties, and the Policies

Plaintiff Motive is a Delaware corporation with its principal place of business in San Francisco, California.[15]  Motive provides AI-powered logistics technologies and services across North America.[16]  Non-party Samsara operates in the same industries and is one of Motive's main competitors.[17]

Defendant Associated is a Florida corporation with its principal place of business in Boca Raton, Florida.[18]  Defendant Vantage Risk Specialty Insurance Co. is a Delaware corporation with its principal place of business in Chicago, Illinois.[19]  Defendant Allianz Underwriters Insurance Co. is an Illinois corporation also

---

[13] *See generally* Excess Insurers MSJ.

[14] *See generally* Plaintiff's Brief in Opposition to the Excess Insurers' Motion for Summary Judgment (hereafter "Excess Insurers MSJ Opp'n") (D.I. 63).

[15] Compl. ¶ 12.

[16] *Id.* ¶ 2.

[17] *See* Samsara Amend. Compl. ¶¶ 17, 23-26, 40.

[18] Compl. ¶ 13.

[19] *Id.* ¶ 14.

headquartered in Chicago, Illinois.[20] Defendant Arch Specialty Insurance Co. is a Missouri corporation with its principal place of business in Kansas City, Missouri.[21] Defendant Fortegra Specialty Insurance Co. is an Arizona corporation with its principal place of business in Jacksonville, Florida.[22] All insurers are authorized to issue insurance policies and conduct "substantial insurance business in Delaware."[23]

Motive purchased the Policies from Insurers to provide cyber liability insurance from August 12, 2023, to August 12, 2024.[24] New York law governs the Policies.[25] The Excess Policy provides coverage in accordance with the Primary Policy, subject to certain additional limitations.[26]

The Policies require Insurers to "pay on behalf of [Motive] any Damages and Defense Costs arising from a Liability Claim first made against [Motive] during the Policy Period for a Media Wrongful Act."[27] The extensive "Media Wrongful Act" definition includes:

---

[20] *Id.* ¶ 15.
[21] *Id.* ¶ 16.
[22] *Id.* ¶ 17.
[23] *Id.* ¶¶ 13-17.
[24] *See* Primary Policy; Excess Policy. The Primary Policy provides $5,000,000 in coverage subject to a $75,000 retention. Primary Policy at Declaration 7. The Excess Policy provides $5,000,000 in excess coverage. Excess Policy at Declaration 3.
[25] *See* Primary Policy at Declaration 5.
[26] *See* Excess Policy § 2 ("[t]his Policy is subject to the provisions, terms, conditions, exclusions, and endorsements of the [Primary] Policy except as provided otherwise[.]"). The Excess Policy explicitly states, "[i]n no event will this Policy grant broader coverage than is provided by [the Primary Policy]." *Id.*
[27] Primary Policy at 2. "Defense Costs" mean "reasonable and necessary fees, costs and expenses incurred by or on behalf of [Motive] in relation to the investigation, defense, settlement of, or response to a Claim[.]" *Id.* at 7. The Primary Policy defines "Liability Claim" as "a written demand

6

the following acts committed by, or on behalf of, [Motive] in the course of creating, displaying, broadcasting, disseminating or releasing Media Information to the public: (A) defamation, libel, slander, product disparagement, trade libel . . . or other tort related to disparagement or harm to the reputation of character of any person or entity; (B) a violation of the rights of privacy of an individual . . . (D) plagiarism, privacy, or misappropriation of ideas under implied contract; . . . (H) infringement of copyright; (I) infringement of domain name, trademark, trade name, trade dress, logo, title, metatag, or slogan, service mark or service name; or (J) unfair competition, if alleged in conjunction with any infringement listed in parts (H) or (I) above.[28]

The Primary Policy contains several coverage exclusions.[29] Relevant here, the Prior Claims and Knowledge exclusion bars coverage for:

any Loss . . . arising out of . . . any fact, event, or circumstance, likely to give rise to a Claim or Loss of which a member of [Motive's] Management was aware (including claims, incidents or circumstances noticed under other insurance), or after reasonable inquiry should have been aware, prior to the Continuity Date.[30]

The "Continuity Date" is August 12, 2023.[31]

---

for money or services, including without limitations the institution of a civil legal complaint[.]" *Id.* at 9. The "Policy Period" runs from August 12, 2023 to August 12, 2024. *Id.* at Declaration 2. The extensive "Media Wrongful Act" definition includes "any of the following acts committed by, or on behalf of, [Motive] in the course of creating, displaying, broadcasting, disseminating or releasing Media Information to the public: (A) defamation, libel, slander, product disparagement, trade libel . . . or other tort related to disparagement or harm to the reputation of character of any person or entity; (B) a violation of the rights of privacy of an individual . . . (D) plagiarism, privacy, or misappropriation of ideas under implied contract; . . . (H) infringement of copyright; (I) infringement of domain name, trademark, trade name, trade dress, logo, title, metatag, or slogan, service mark or service name; or (J) unfair competition, if alleged in conjunction with any infringement listed in parts (H) or (I) above." *Id.* at 10.

[28] *Id.* at 10.

[29] Primary Policy at 14-17.

[30] *Id.* at 15.

[31] Primary Policy at Declaration 5; Excess Policy at Declaration 11.

The Excess Policy contains two additional relevant exclusions.[32]  The "Prior and Pending Litigation" exclusion bars any claim:

> directly or indirectly arising out of, resulting from, based upon, or attributable to any demand, claim, suit, arbitration, mediation, litigation, or administrative, bankruptcy or regulatory proceeding or investigation commenced prior to or pending as of [August 12, 2023] . . . or alleging, arising out of, based upon, or attributable to any fact, circumstance, situation, or wrongful act, alleged in such claim, demand, suit . . . .[33]

The "Continuity Date" exclusion:

> [e]xcludes from coverage any claim directly or indirectly arising out of, resulting from, based upon, or attributable to . . . any wrongful act occurring prior to [August 12, 2023] . . . or any related act thereto (regardless of when the related act occurs) if, as of the Continuity Date, [Motive] knew of such act, error or omission and knew, or could have reasonably foreseen, that such act, error or omission did or would result in a claim under this Policy.[34]

## B. Motive and Samsara's Dispute

Motive and Samsara have been fierce competitors in the logistics technology sector for several years.[35]  On June 8, 2022, Samsara sent a letter to Motive's Board of Directors (the "June 8 Letter"), ███████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

---

[32] *See* Excess Policy § IV.

[33] *Id.* § IV(A).

[34] *Id.* § IV(C).

[35] *See* Affidavit of Aaron Hou in Support of Plaintiff's Motion for Partial Summary Judgment on Insurers' Defense Obligations (hereafter "Hou Aff.") ¶¶ 4-9 (D.I. 33).

██████████[36] The June 8 Letter accused Motive of accessing Samsara's platform without authorization to steal Samara's technology and "rip off Samsara's marketing strategy."[37] Additionally, the June 8 Letter asserted that Motive lead an "unlawful campaign with false advertising about Samsara," including commissioning a misleading "benchmarking analysis" the "result of [which] . . . were clearly rigged to paint Samsara's [technology] in a false light."[38] Samsara: (1) accused Motive of violating California competition laws; (2) demanded Motive cease its allegedly wrongful conduct; (3) directed Motive to preserve evidence; and (4) stated "[i]f motive does not cease its unlawful and fraudulent conduct immediately, Samsara will commence litigation[.]"[39]

On July 29, 2022, Motive responded to the June 8 Letter (the "July 29 Letter").[40] The July 29 Letter denied Samsara's allegations and asserted that the June 8 Letter "tries to re-write history" to hide Samsara's own wrongful conduct.[41] The July 29 Letter also defended Motive's benchmarking study.[42] Motive represented, "[a]lthough we hope for an amicable resolution such that costly litigation is unnecessary and the companies can

---

[36] Excess Insurers MSJ, Ex. 1 (hereafter "June 8 Letter").
[37] *Id.*
[38] *Id.*
[39] *Id.*
[40] *See* Excess Insurers MSJ, Ex. 2.
[41] *Id.*
[42] *Id.* ("Samsara may not like the result of the Strategy Analytics report, but Samsara cannot suppress it by threatening litigation.").

return to competing fairly in the marketplace, Motive is also prepared to pursue all legal remedies."[43]

Samsara responded on September 15, 2022 (the "September 15"), reiterating the June 8 Letter's complaints, denying the July 29 Letter's accusations, and requesting that the parties meet for negotiations.[44] Motive and Samsara met in November and December of 2022 to attempt to resolve their dispute.[45] At the November meeting, Samsara proposed two "where we go from here" options – "Settlement" or "Litigation."[46]

On December 30, 2022, Motive wrote to Samsara summarizing the dispute up to that point (the "December 30 Letter").[47] The December 30 Letter noted that Samsara rejected Motive's previous settlement offer.[48] Accordingly, Motive stated:

> I too hoped there would be a way to resolve this seemingly pointless dispute, and still believe there is, along the lines that we proposed [previously] and continue to offer. But if litigation is what Samsara wants in order to move forward and resolve the issues, rest assured that is what it will get.[49]

---

[43] *Id.*
[44] *See* Excess Insurers MSJ, Ex. 3.
[45] *See* Excess Insurers MSJ, Exs. 4-5
[46] Excess Insurers MSJ, Ex. 4.
[47] *See* Excess Insurers MSJ, Ex. 5.
[48] *See id.* Specifically Motive ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ *Id.*
[49] *Id.*

In January 2023, "Samsara declared that 'all avenues short of litigation' had been 'exhausted.'"[50]  Yet, the parties continued exchanging similar accusatory letters in September 2023,[51] October 2023,[52] and January 2024.[53]  The Court refers to all these letters collectively as the "Prelitigation Letters."

On January 24, 2024, Samsara filed the Samsara Action.[54]  Samsara's March 20, 2024, amended complaint challenged "Motive's pervasive copying and use of Samsara's proprietary technology, its false and misleading advertisements, and its unauthorized access to Samsara's computers and networks."[55]  Samsara brought nine causes of action: (1) Counts I-III for patent infringement[56]; (2) Count IV – False Advertising;[57] (3) Counts V and VI alleging fraud[58]; and (4) Counts VI-IX alleging violations of California and Delaware competition law.[59]  Samsara's amended complaint specifically referenced the June 8 and September 15 Letters, and challenged many of the same acts raised in the Prelitigation Letters.[60]

---

[50] Excess Insurers MSJ, Ex. 6.
[51] *See* Excess Insurers MSJ, Ex. 7.
[52] *See* Excess Insurers MSJ, Ex. 6.
[53] *See* Excess Insurers MSJ, Ex. 8.
[54] *See* Samsara Compl.
[55] Samsara Amended Compl. ¶ 1.
[56] *See id.* ¶¶ 127-189.
[57] *See id.* ¶¶ 190-198.
[58] *See id.* ¶¶ 199-215.
[59] *See id.* ¶¶ 216-233.
[60] *See id.* ¶ 65. *See also id.* ¶¶ 48-96.

On February 15, 2024, Motive filed the Motive Action.[61] The Motive Action asserted eight causes of action and broadly accused Samsara of the same conduct at issue in the Samsara Action.[62] Given their overlapping allegations, the U.S. District Court for the Northern District of California determined that the Samsara Action and Motive Action were related.[63] Motive "retained the same counsel in both Actions," and has incurred over $2 million in defense costs.[64] Motive seeks coverage for the Actions from Insurers.

## C. The Parties' Coverage Dispute

On February 1, 2024, Motive gave Insurers notice of the Samsara Action.[65] Associated denied that the Primary Policy covers the Samsara Action.[66] Excess Insurers adopted that coverage position.[67] In June 2024, Motive wrote to Associated, requesting that Insurers reimburse its Samsara Action defense costs.[68] Associated again denied coverage.[69] On September 12, 2024, however, Insurers altered their position – stating, "certain counts of [Samsara's] Amended Complaint trigger defense coverage under the

---

[61] *See* Motive Action Complaint.
[62] *See id.* ¶¶ 140-231.
[63] *See* Hou Aff. ¶ 15. Notably, the Court did not join the Actions into a single suit. *Id.*
[64] *Id.* ¶¶ 14, 16.
[65] *See* Motive MSJ, Ex. 5 ("[w]e write further to our letter dated February 1, 2024, in which we acknowledged receipt of [Motive's Samsara Action notice].").
[66] *See id.*
[67] *See* Motive MSJ, Ex. 6.
[68] *See* Motive MSJ, Ex. 7.
[69] *See* Motive MSJ, Ex. 8.

Polic[ies]" and "agree[ing] to pay, on behalf of Motive [] Defense Costs related to the Samsara [Action]."[70]

On December 20, 2024, Associated revised its coverage position citing the Prelitigation Letters it received from Motive.[71] Associated "withdr[ew] its agreement to pay Damages and Defense Costs on behalf of [Motive] relating to the Samsara [Action]."[72] Specifically, Associated asserted that the June 8 Letter shows that the Primary Policy's Prior Claims and Knowledge exclusion bars coverage.[73] Excess Insurers again adopted Associated's revised coverage position.[74] Motive then filed this lawsuit.[75]

## D. Procedural History

Motive filed its Complaint on January 17, 2025.[76] Broadly, the Complaint alleges that Insurers breached their duty to defend and indemnify Motive for costs and losses incurred in the Actions.[77] Motive advances five causes of action: (1) Count I, Breach of Contract Against [Associated] – Duty to Defend;[78] (2) Count II, Anticipatory Breach of

---

[70] Motive MSJ, Ex. 9; *see* Motive MSJ, Ex. 10 (Associated's revised coverage letter); Ex. 11 (Excess Insurers adopting Associated's coverage position).
[71] *See* Motive MSJ, Ex. 12.
[72] *Id.*
[73] *See id.*
[74] *See* Motive MSJ, Ex. 13.
[75] *See generally* Compl.
[76] *See generally id.*
[77] *See id.* ¶¶ 1, 7-10.
[78] *See id.* ¶¶ 75-81.

Contract Against [] [] Excess Insurers – Duty to Defend;[79] (3) Count III, Declaratory Judgment against All Defendants – Defense Costs;[80] (4) Count IV, Anticipatory Breach of Contract against All Defendants – Indemnification;[81] and (5) Count V, Declaratory Judgment against All Defendants – Indemnification.[82] In March 2025, Insurers answered the Complaint, denying Motive's allegations and raising various affirmative defenses.[83]

Motive moved for summary judgment almost immediately thereafter on March 25, 2025.[84] In April 2025, Excess Insurers filed their own Motion for Summary Judgment, which also opposed Motive's Motion.[85] The parties completed briefing on the Motions over the following months.[86] The Court heard oral argument concerning the Motions on August 1, 2025, and took the matter under advisement.

## III.    THE PARTIES' ARGUMENTS

---

[79] *See id.* ¶¶ 82-89.

[80] *See id.* ¶¶ 90-99.

[81] *See id.* ¶¶ 100-107

[82] *See id.* ¶¶ 108-117.

[83] *See* Associated Answer; Defendant Fortegra Specialty Insurance Company's Answer and Affirmative Defenses to Plaintiff's Complaint (D.I. 22); Defendant Arch Specialty Insurance Company's Answer and Affirmative Defenses to Plaintiff's Complaint (D.I. 23); Defendant Vantage Risk Specialty Insurance Company's Answer and Affirmative Defenses to Plaintiff's Complaint (D.I. 24); Defendant Allianz Underwriters Insurance Company's Answer and Affirmative Defenses to Plaintiff's Complaint (D.I. 25).

[84] *See generally* Motive MSJ.

[85] *See generally* Excess Insurers MSJ.

[86] *See generally* Motive MSJ Opp'n; Excess Insurers MSJ Opp'n; Excess Insurers' Reply Brief in Support of Their Motion for Summary Judgment (hereafter "Excess Insurers MSJ Reply") (D.I. 69); Plaintiff's Reply Brief in Support of Its Motion for Partial Summary Judgment on Insurers' Defense Obligations (hereafter "Motive MSJ Reply") (D.I. 70).

Motive seeks summary judgment ordering "Insurers honor their duty to defend by reimbursing Motive [for] its already-incurred defense costs and fees, as well as all future defense costs and fees[.]"[87] Motive argues that the Policies require Insurers to defend the Samsara Action.[88] The Primary Policy requires Insurers "pay on behalf of [Motive] any Damages and Defense Costs arising from a Liability Claim first made against [Motive] during the Policy Period for a Media Wrongful Act."[89] Motive insists that the Samsara Action fits that definition.[90] Motive points out that Samsara's Amended Complaint is a "civil legal complaint" filed against Motive.[91]

---

[87] Motive MSJ at 1. Motive notes "[b]ecause there is not yet any judgment or settlement in the underlying matter, Motive does not address Insurers' indemnification obligation in [its] motion. Motive reserves all rights, and waives none, to address Insurers' indemnification obligation at a later time." *Id.* at 1 n.1.

[88] *Id.* at 19-26. Because *some* of Samsara's claims trigger Insurers' defense obligations, Motive insists Insurers must defend the *entire Samsara* Action. Motive MSJ at 23; *see Fieldston Prop. Owners Ass'n, Inc. v. Hermitage Ins. Co., Inc.*, 945 N.E.2d 1013, 1018 (N.Y. 2011) ("if any of the claims against an insured arguably arise from covered events, the insurer is required to defend the entire action." (internal quotes omitted)).

[89] Primary Policy at 2. "Defense Costs" mean "reasonable and necessary fees, costs and expenses incurred by or on behalf of [Motive] in relation to the investigation, defense, settlement of, or response to a Claim[.]" *Id.* at 7. The Primary Policy defines "Liability Claim" as "a written demand for money or services, including without limitations the institution of a civil legal complaint[.]" *Id.* at 9. The "Policy Period" runs from August 12, 2023 to August 12, 2024. *Id.* at Declaration 2. The extensive "Media Wrongful Act" definition includes "any of the following acts committed by, or on behalf of, [Motive] in the course of creating, displaying, broadcasting, disseminating or releasing Media Information to the public: (A) defamation, libel, slander, product disparagement, trade libel . . . or other tort related to disparagement or harm to the reputation of character of any person or entity; (B) a violation of the rights of privacy of an individual . . . (D) plagiarism, privacy, or misappropriation of ideas under implied contract; . . . (H) infringement of copyright; (I) infringement of domain name, trademark, trade name, trade dress, logo, title, metatag, or slogan, service mark or service name; or (J) unfair competition, if alleged in conjunction with any infringement listed in parts (H) or (I) above." *Id.* at 10.

[90] *See* Motive MSJ at 19-23.

[91] *See generally* Samsara Amend. Compl.

Thus, Samsara's Amended Complaint qualifies as a "Liability Claim."[92] Motive also notes that Samsara filed its Amended Complaint during the policy period in January 2024.[93] Considering Samsara's allegations, Motive insists that the Samsara Action challenges a "Media Wrongful Act."[94]

Insurers do not meaningfully dispute that the Policies cover at least *some* of actions challenged in the Samsara Action.[95] Indeed, Associated's revised coverage position recognized Counts IV, VIII, and IX "potentially trigger coverage under the [Primary] Policy," before denying coverage based on an exclusion.[96] Rather, Insurers rely on various exclusions in the Policies to argue they have no duty to defend Motive in the Samsara Action.

Excess Insurers seek summary judgment ruling that the Excess Policy's Prior and Pending Litigation Exclusion bars coverage for the Actions.[97] Excess Insurers

---

[92] *Id.* at 19 (citing Primary Policy at 2, 7, 9).

[93] *Id.* (citing Primary Policy at Declaration 2); *See generally* Samsara Amended Complaint.

[94] *Id.* at 20-22 (citing Samsara Amended Complaint ¶¶ 60, 62, 68, 74-76, 82-85, 87-88). Motive also notes "Insurers [previously] have repeatedly agreed that some of Samsara's allegations trigger coverage." *Id.* at 22-23 (citing Motive MSJ, Ex. 9 (September 12, 2024 email in which "AmTurst acknowledge[d] that certain counts of [Samsara's] Amended Complaint trigger defense coverage under the [Primary] Policy."); Ex 10 (Associated formally revising its coverage position disclaiming coverage for Counts I-III, V-VII of Samsara's Amended Complaint, but "agree[ing]to pay on behalf of Motive any Damages and reasonable Defense Costs arising from the claims made under Counts IV, VIII and IX of [Samsara's] Amended Complaint."); Ex. 11 (Excess Insurers adopting Associated's revised coverage position).

[95] *See* Excess Insurers MSJ; Motive MSJ Opp'n.

[96] Motive MSJ, Ex. 12

[97] *See generally* Excess Insurers MSJ. As such, Excess Insurers' affirmative argument also opposes Motive's Motion. Alternatively, Excess Insurers ask the Court to deny Motive's Motion, because "there are at least genuine issues of material fact, whether, before the August 12, 2023 inception of the Excess Policy, Motive reasonably should have foreseen that Samsara would sue." *Id.* at 4,

point out that the Excess Policy excludes coverage for "any claim directly or indirectly arising out of . . . any demand, claim, suit . . . commenced prior to or pending as of [August 12, 2023] . . . or alleging [or] arising out of . . . any fact, circumstance, situation, or wrongful act, alleged in such claim, demand [or] suit[.]"[98] Excess Insurers assert that the Samsara Action arises out of facts and circumstances described in an earlier demand – the Prelitigation Letters.[99] Hence, Excess Insurers maintain that the Prior and Pending Litigation exclusion defeats Motive's coverage claim.[100]

Similarly, Associated argues that there is at least a genuine issue of material fact regarding whether the Primary Policy's Prior Claim and Knowledge exclusion

---

27-32 ("Excess Insurers [] should be granted the opportunity to take discovery on these prior knowledge issues."). Excess Insurers rely on the Excess Policy's Continuity Date exclusion and the Primary Policy's Prior Claim and Knowledge exclusion to support this argument. *See id.* at 27-30. Excess Insurers proffer a Rule 56(f) request to allow discovery on issues such as Motive's knowledge. *See id.* at 30-32 ("[t]his case is in its infancy. The pleadings just recently closed and no case management order has been entered . . . . The concurrently filed Duffield Declaration sets forth the additional discovery that the Excess Insurers intend, and should be permitted, to take."). Associated similarly argues that Motive's Motion "is premature" because "discovery has just begun" and Motive "has not yet formally produced any documents." Motive MSJ Opp'n at 1, 3-4 ("[i]n addition, third parties such as Samsara exclusively control documents and information that may affect whether Motive is entitled to coverage."). Accordingly, Insurers submitted affidavits requesting discovery pursuant to Rule 56(f) before the Court rules on Motive's Motion. *See* Declaration of Cara Duffield, Esquire in support of Excess Insurers' Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Partial Summary Judgment on Insurers' Defense Obligation (hereafter "Duffield Decl."); Affidavit of Matthew Furton, Esq. in support of Associated Industries Insurance Company, Inc's Answering Brief in Opposition to Plaintiff's Motion for Partial Summary Judgment on Insurers' Defense Obligation (hereafter "Furton Decl.") (D.I. 64).

[98] Excess Policy § IV.A.

[99] Excess Insurers MSJ at 16-26.

[100] *Id.*

abrogates its duty to defend Motive in the Samsara Action.[101]  As with Excess Insurers, Associated relies on the Prelitigation Letters to support its positions.

Motive insists that the exclusions on which Insurers rely do not bar coverage for several reasons.[102]  First, Motive argues that the exclusions do not apply to Samsara's allegations regarding activities after the parties sent the Prelitigation Letters.[103]  Second, Motive maintains that the Prelitigation Letters are not a "demand."[104]  Finally, Motive insists that the Court cannot consider the Prelitigation Letters when determining Insurers' duty to defend.[105]  Because the Court concludes Insurers have a duty to defend Motive in the Samsara Action notwithstanding the Prelitigation Letters, it need not evaluate the parties other arguments.

## IV.    STANDARD OF REVIEW

Summary Judgment is proper when "there are no material issues of fact in dispute and the moving party is entitled to judgment as a matter of law."[106]  On such a motion,

---

[101] *See* Motive MSJ Opp'n at 22-29.  Additionally, Associated contends that a genuine factual dispute exists regarding its other affirmative defenses. *Id.* at 29-30.  For example, Associated suggests "Motive knew about policies of insurance other than the Primary Policy that may provide coverage for the Samsara claims" and seeks discovery concerning Motive's prior claim submission. *Id.*

[102] *See* Excess Insurers MSJ Opp'n at 19-32.

[103] *See id.* at 20-23.

[104] *See id.* at 29-32.

[105] *See id.* at 23-26.

[106] *Lyondell Chemical Co. v. Ryan*, 970 A.2d 235, 241 (Del. 2009).  Although New York law governs the policies, Delaware law provides the proper summary judgment standard. *See Chaplake Holdings, LTD v. Chrysler Corp.*, 766 A.2d 1, 5 (Del. 2001) ("[a]s a general rule, the law of the forum governs procedural matters."); *US Dominion, Inc. v. Fox News Network, LLC*, 2021 WL 5984265, at *18 (Del. Super. Dec. 16, 2021) ("[s]tandards of review are consistently classified as procedural for choice-of-law purposes[.]") (internal quotes omitted).

18

"the facts of record, including any reasonable inference to be drawn therefrom, must be viewed in the light most favorable to the nonmoving party."[107]  Courts do not "weigh qualitatively or quantitatively the evidence adduced on the summary judgment record."[108]  Rather, "[t]he question is whether *any rational* finder of fact could find . . . that the substantive evidentiary burden has been satisfied."[109]  This standard is not altered when the parties file cross-motions for summary judgment.[110] Cross-motions for summary are not necessarily "a concession of an absence of material fact."[111]

New York principles of contract interpretation are critical to resolving the Motions.  Under New York law, "insurance agreement[s] [are] subject to principles of contract interpretation."[112]  As such, "unambiguous provisions of an insurance contract must be given their plain and ordinary meaning, and the interpretation of such provisions is a question of law for the court."[113]  Ambiguities are construed

[107] *LaPoint v. AmerisourceBergen Corp.*, 970 A.2d 185, 191 (Del. 2009).

[108] *Cerberus Intern., LTD. v. Apollo Management, L.P.*, 794 A.2d 1141, 1150 (Del. 2002) ("[i]f the matter depends to any material extent upon a determination of credibility, summary judgment is inappropriate.").

[109] *Id.*

[110] *CM Commercial Realty, Inc. v. Alpha Trust Real Estate, LLC*, 2022 WL 509693, at *3 (Del. Super. Feb. 18, 2022) (citations omitted).

[111] *Waters v. Delaware Moving and Storage, Inc.*, 300 A.3d 1, 12 (Del. 2023).  Although cross-motions for summary judgment can "be the equivalent of a stipulation for decision on the merits based on the record submitted with the motions," that is not the case here as the parties argue the material facts are in dispute. *Id.*

[112] *Universal American Corp. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 16 N.E.3d 78, 80 (N.Y. 2015).

[113] *White v. Continental Cas. Co.*, 878 N.E.2d 1019, 1021 (N.Y. 2007); *see Dean v. Tower Ins. Co. of N.Y.*, 979 N.E.2d 1143, 1145 (2010) ("contracts must be interpreted according to common speech and consistent with the reasonable expectations of the average insured.").

against the insurer.[114]  Additionally, courts read insurance contracts so "no provision is without force and effect."[115]

Under New York law, insurance companies have "a duty to defend [an insured] if the allegations [in the complaint] state a cause of action that gives rise to the reasonable probability of coverage under the policy."[116]  The "exceedingly broad"[117] duty to defend, applies "[i]f [the] complaint contains any facts or allegations which bring the claim even potentially within the protection purchased[.]"[118]  Moreover, "the insurer is required to defend the entire action" if any claim "arguably arises from covered events[.]"[119]  To "negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case."[120]

---

[114] *In re Viking Pump, Inc.*, 52 N.E.3d 244, 257 (N.Y. 2016).  A provision is only ambiguous if it is reasonably susceptible to multiple interpretations. *See id.* at 258.

[115] *Roman Catholic Diocese of Brooklyn v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 991 N.E.2d 666, 671-72 (N.Y. 2013).

[116] *Belt Painting Corp. v. TIG Ins. Co.*, 795 N.E.2d 15, 17 (N.Y. 2003) (citations omitted).

[117] *BP Air Conditioning Corp. v. One Beacon Ins. Grp.*, 871 N.E.2d 1128, 1131 (N.Y. 2007).

[118] *Regal Const. Corp. v. National Union Fire Ins. Co. of Pittsburgh, PA*, 930 N.E.2d 259, 261 (N.Y. 2010) (internal quotes omitted).

[119] *Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*, 779 N.E.2d 167, 170 (N.Y. 2002) (internal quotes omitted).

[120] *Continental Cas. Co. v. Rapid-American Corp.*, 609 N.E.2d 506, 512 (1993).  Accordingly, "policy exclusions are given a strict and narrow construction, with any ambiguity being resolved against the insurer." *Belt Painting*, 795 N.E.2d at 17.

## V.  ANALYSIS

### A. Insurers Have a Duty to Defend the Samsara Action, which Includes Allegations Concerning Post-Prelitigation Letters Conduct.

Insurers argue that various exclusions in the Policies obviate their duty to defend Motive in the Samsara Action.[121]  Motive contends that the exclusions "cannot apply to allegations concerning events after the Prelitigation Letters were sent" – namely, "the VTTI Study, which occurred in 2023."[122]  Motive insists that this defeats Insurers' arguments, because "New York law is clear that an exclusion relieves an insurer's duty to defend only where the allegations are 'solely and entirely' within the exclusion's scope."[123]

Excess Insurers disagree with Motive's argument because "the Prior and Pending Litigation Exclusion does not demand absolute identity of the prior demand and the present litigation."[124]  Because "the Samsara Action directly or indirectly arises out of . . . a[] fact circumstance, situation, or wrongful act alleged in" the Prelitigation Letters, Excess Insurers insist that the Prior and Pending Litigation Exclusion obviates their duty to defend.[125]  Additionally, Excess Insurers maintain

---

[121]

[122] *Id.* at 20-23 (citing Samsara Amended Complaint ¶¶ 77, 81, 86; Samsara Amended Complaint, Exs. 5-6).

[123] *Id.* at 20-21 (quoting *Emery v. Cap. Mut. Ins. Co.*, 151 A.D.2d 854, 855 (N.Y. App. Div. 1989).

[124] Excess Insurers MSJ Reply at 12.

[125] *Id.* at 12-13.  Excess Insurers insist "[n]umerous courts analyzing similar exclusions have observed that it is the commonalities between the prior and present claims that matter, not the differences." *Id.* at 13 (citing *Zunenshine v. Exec. Risk Indem., Inc.*, 1998 WL 483475, at *5 (S.D.N.Y. Aug. 17, 1998), *aff'd*, 182 F.3d 902 (2d Cir. 1999); *Quanta Lines Ins. Co. v. Invs. Cap. Corp.*, 2009 WL 4884096, at *114-15, 21 (S.D.N.Y. Dec. 17, 2009), *aff'd sub nom. Quanta*

21

that "[t]he VTTI Study is not *sui generis*; it [falls] completely . . . with[in] Samsara's allegations in" the Prelitigation Letters.[126]

The Prior and Pending Litigation Exclusion does not absolve excess insurers of their duty to defend motive in the Samsara Action. Under New York law the duty to defend is "exceedingly broad"[127] and any doubts regarding whether the duty to defend exists "are [] [] resolved in the insured's favor and against the insurer."[128] An insurer has a duty to defend "[i]f [the] complaint contains *any facts or allegations* which bring the claim *even potentially* within the protection purchased[.]"[129] Accordingly, a policy exclusion does not excuse an insurer's duty to defend unless the underlying allegations "are *solely* and *entirely* within the policy exclusions."[130] Under that standard the relevant question is whether the Samsara Action contains "any [] [] allegations [that] arguably arise from a covered event" not within the Prior and Pending Litigation Exclusion.[131]

*Specialty Lines Ins. Co. v. Invs. Cap. Corp.*, 403 F. App'x 530 (2d Cir. 2010); *Exec. Risk Indem., Inc. v. Starwood Hotels & Resorts Worldwide, Inc.*, 951 N.Y.S.2d 13, 15-16 (N.Y. App. Div. 2012). While Excess Insurers accurately describes the standard for determining whether a policy exclusion obviates a duty to indemnify, they ignore "that the duty to defend is broader than the duty to indemnify." *Fitzpatrick v. American Honda Motor Co., Inc.*, 78 N.Y.2d 61, 65 (N.Y. 1991).

[126] Excess Insurers MSJ Reply at 15-16. Specifically, Excess Insurers assert "according to Samsara, the two studies were part of the same Motive method of unfair competition." *Id.* at 16.

[127] *BP Air Conditioning*, 871 N.E.2d at 1131.

[128] *U.S. Fidelity & Guar. Co. v. Annunziata*, 67 N.Y.2d 229, 232 (N.Y. 1986).

[129] *Regal Const. Corp. v. National Union Fire Ins. Co. of Pittsburgh, PA*, 930 N.E.2d 259, 261 (N.Y. 2010) (internal quotes omitted) (emphasis added).

[130] *Emery*, 151 A.D.2d at 855 (emphasis added).

[131] *Deetjen v. Nationwide Mut. Fire Ins. Co.*, 302 A.D.2d 350, 352 (N.Y. App. 2003).

The Samsara Action's allegations raise a reasonable probability of liability related to the VTTI Study that falls outside the Prior and Pending Litigation Exclusion. Comparing Samsara's Amended Complaint with the June 8 Letter supports that conclusion. First, the June 8 Letter contains no mention of the later-conducted VTTI Study.[132] Second, according to Samsara's allegations, the Strategy Analytics and VTTI studies were conducted by different entities, over different time periods, using different datasets, and produced different statistical results.[133] Notably, while Samsara challenges the Strategy Analytics study's accuracy across several metrics, it primarily takes issue with the VTTI Study's results regarding detection of drivers failing to wear seatbelts.[134] Third, Samsara claims that the studies were flawed in different ways. Samsara asserts that Strategy Analytics "did not enable all the necessary features on Samsara's dashboard to allows the dash cam to detect certain unsafe driving," artificially deflating the figures reported concerning Samsara's technology.[135] Conversely, Samsara alleges that VTTI altered

---

[132] *See* June 8 Letter (discussing the Strategy Analytics study alone); Samsara Amend. Compl. ¶ 77 (alleging Motive commissioned the VTTI Study in 2023).

[133] *See* Samsara Amend. Compl. ¶¶ 68-76 (alleging Strategy Analytics conducted the Strategy Analytics Study in 2022 and concluding that "Motive's 'AI Dashcam detects unsafe behavior more accurately than' Samsara's, with Motive's detection accuracy being '89%' compared to Samsara's being '15%' [as well as] that 'Motive is 72% more accurate than Samsara at detecting close following, and alerts drivers 14.2 seconds faster.'"), 77-87 (alleging VTTI conducted the VTTI Study in 2023 and found "that 'Motive achieves highest alert rates for six unsafe behaviors,' with '86% of events successfully alerted to at 9.4 seconds' for Motive, and '21% of events successfully alerted to at 12 seconds' for Samsara.").

[134] *Compare* Samsara Amend. Compl. ¶¶ 73-74 (discussing the Strategy Analytics study), *with* 80-1 (discussing the VTTI Study).

[135] June 8 Letter; *see* Samsara Amend. Compl. ¶ 73.

23

Samsara's dash cam setting to "ensur[e] that it would never issue an alert in response to detecting the driver failing to wear a seatbelt."[136] Fourth, the Motive advertising statements Samsara challenges regarding each study are different.[137] Finally, Samsara specifically objects to Motive's continued use of the VTTI Study in advertising after VTTI published a clarification "expressly acknowledg[ing] the flaws with its methodology" – an allegation of liability totally absent from the June 8 Letter.[138]

These differences show it is reasonably possible that Samsara's allegations concerning the VTTI Study do not arise out of or result from the Strategy Analytics study exclusively discussed in the June 8 Letter. Hence, there is at least a chance Samsara Action's Allegations do not solely and exclusively fall within the Prior and Pending Litigation Exclusion. Accordingly, that exclusion does not obviate Excess Insurers' duty to defend Motive in the Samsara Action. For the same reason,

---

[136] Samsara Amend. Compl. ¶ 81.

[137] *Compare* Samsara Amend. Compl. ¶¶ 74 (challenging Motive's use of the Strategy Analytics Study to claim "[e]xperts agree, Motive is the most accurate, fastest AI dash cam" and "[t]he Motive AI Dashcam detects unsafe behavior more accurately than the competition."), *and* 88 (alleging Motive improperly used the Strategy Analytics study to are "'[d]rivers prefer Motive's image and video quality[.]'"), *with* 82 (taking issue with Motive's use of the VTTI study to assert "that Smsara had '0% success' in the seatbelt test, compared to Motive's "100% success' rate[.]").

[138] Samsara Amend. Compl. ¶¶ 86-87; *see generally* June 8 Letter (lacking any comparable language).

Associate also has a duty to defend Motive in the Samsara Action.[139]  Motive's Motion is **GRANTED** and Excess Insurers' Motion is **DENIED** on that issue.

To be clear, the Court is not affirmatively holding that the various exclusions in the Policies do not apply such that Insurers must indemnify any liability Motive faces due to the Samsara Action.  Rather, the Court applies well-settled New York law to conclude that Insurers must defend Motive in the Samsara Action, because it is possible that case will result in a covered claim.  If the Samsara Action does not result in a covered claim, "any defense costs advanced are subject to recoupment."[140]

---

[139] Associated relies on the Primary Policy's Prior Claims and Knowledge exclusion which bars coverage for "any loss . . . arising out of . . . any fact, event, or circumstance likely to give rise to a Claim or Loss of which a member of [Motive's] Management was aware . . . or after reasonable inquiry should have been aware, prior to [August 12, 2023]." Primary Policy at 14-15.  All parties acknowledge that "a two-prong test governs the applicability of the exclusion." *Liberty Ins. Underwriters, Inc. v. Corpina Piergrossi Overzat & Klar LLP*, 913 N.Y.S.2d 31 (N.Y. App. Div. 2010); *see* Motive MSJ Opp'n at 23; Motive MSJ Reply at 9-11.  Thus, the Prior Claims and Knowledge exclusion bars coverage if the Prelitigation Letters made Motive subjectively aware of facts suggesting that the Samsara Action was "likely" to an objective, reasonable insured. Primary Policy at 14-15.  The Court has already addressed Motive's argument that the Prelitigation Letters cannot be considered when evaluating Associated's coverage obligations.  *See supra* IV.A.3; Motive MSJ Reply at 5-8. Yet, as discussed above, it is at least reasonably possible the Prelitigation Letters did not give Motive notice of the portion of the Samsara Action concerning the VTTI Study. Accordingly, Associated must defend Motive in the entire Samsara Action. *See Sammy v. First American Title Insurance Company*, 205 A.D.3d 949, 953 (N.Y. App. 2022) ("[i]f any of the claims against the insured arguably arise from covered events, the insurer is required to defend the entire action[.]"),

[140] *QBE Americas, Inc. v. ACE American Ins. Co.*, 997 N.Y.S.2d 670 (Table) (N.Y. Sup. 2014); *see National Union Fire Ins. Co. of Pittsburgh, PA v. Ambassador Group, Inc.*, 157 A.D.2d 293 (N.Y. App. 1990); *Vigilant Ins. Co. v. Credit Suisse First Boston Corp.*, 10 A.D.3d 528, 529 (N.Y. App. 2004).

**B. Insurers are Not Obligated to Indemnify Costs Motive Incurred in the Motive Action.**

In addition to the Samsara Action, Motive maintains that Insurers must indemnify costs associated with the Motive Action.[141] Motive acknowledges that an insurer's duty to defend does not typically extend to affirmative claims, but argues that coverage exists for the Motive Action because its "affirmative claims are intertwined with its defense in the underlying [Samsara Action]."[142] Thus, Motive bases its claim for Motive Action costs on Insurers' obligation to defend the Samsara Action.

While Insurers must defend Motive in the Samsara Action, that obligation does not extend to the Motive Action. New York courts only extend the duty to defend to an insured's affirmative suit where the claims are "an essential component of the[] [insured's] defense of the main underlying action."[143] "New York courts have hewed to the relatively restrictive mirror-image standard" to evaluate whether an affirmative claim is an essential component of an insured's defense in an

---

[141] Motive MSJ at 26-28.

[142] *Id.* (citing *Jenel Mgmt. Corp. v. Pac. Ins. Co.*, 55 A.D.3d 313, 313 (N.Y. App. Div. 2008) (holding defense costs in affirmative "third-party claims" were covered, because they "were an essential component of [insured's] defense in the main underlying action[.]"). Motive asserts: (1) all its allegations in the Motive Action either refute Samsara's factual allegations or accuse Samsara of the same conduct at-issue in the Samsara Action; (2) it "expressly alleges that it brought the Motive Action in direct response to . . . the Samsara Action; and (3) it "used the same counsel in both Actions." *Id.* at 27-28 (citing Hou Aff. ¶¶ 12-15; Motive MSJ, Ex. 2 ¶ 21).

[143] *Jenel Mgmt. Corp. v. Pac. Ins. Co.*, 55 A.D.3d 313, 313 (N.Y. App. Div. 2008); *see Liberty Mutual Insurance Corporation v. New York Marine and General Insurance Company*, 505 F. Supp. 3d 260, 275 (S.D.N.Y.).

26

underlying action.[144]  Under the "mirror image standard" the insured's "affirmative claims cannot be 'separable from the main action on any coherent grounds, and cannot go 'further than merely seeking the opposite of the relief demanded of the party.'"[145] This typically occurs when "an insured br[ings] a pre-emptive suit seeking a declaration of non-[liability] against a party who had threatened–and then brought– suit[.]"[146]

The Motive Action is not a "mirror image" of the Samsara Action.   To be sure, the Motive Action complaint accuses Samsara of the same wrongful conduct at issue in the Samsara Action.[147]  Yet, the Motive Action does not seek a declaration that Motive is not liable in the Samsara Action.[148]  Even if Motive were to prevail completely in the Motive Action, that would neither moot the Samsara Action, nor address Samsara's claims.  As such, the Motive Action is separable from the Samsara Action and goes further than seeking the opposite of Samsara's requested relief. Hence, even though Insurers must defend the Samsara action, that obligation does not extend to the affirmative Motive Action. Accordingly, Motive's Motion is

---

[144] *VR Optics, LLC v. Peloton Interactive, Inc.*, 2021 WL 1198930, at *2 (S.D.N.Y. Mar. 30, 2021).
[145] *Arrow Lighter, Inc. v. North American Capacity Insurance Company*, 2024 WL 553716, at *11 (E.D.N.Y. Jan. 2, 2024) (quoting *VR Optics*, 2021 WL 1198930, at *2).
[146] *Id.* (citing *Smart Style Industries, Inc. v. Pennsylvania General Ins. Co.*, 930 F. Supp. 159, 165 (S.D.N.Y. 1996)).
[147] *Compare* Motive Action Compl., *with* Samsara Amend. Compl.
[148] *See* Motive Action Compl. at Prayer for Relief (requesting damages and an injunction, but not a declaration that Motive is not liable to Samsara).

**DENIED** and Excess Insurers' Motion is **GRANTED** concerning the obligation to defend and indemnification the Motive Action.

## VI.    CONCLUSION

For the foregoing reasons the Court **GRANTS** in part, **DENIES** in part Motive's Motion for Partial Summary Judgment and **GRANTS** in part, **DENIES** in part Excess Insurers' Motion for Summary Judgment.

**IT IS SO ORDERED.**

_____
Sheldon K. Rennie, Judge